Daniel R. PETERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 57351.

Court of Criminal Appeals of Texas,
Panel No. 1.

Jan. 10, 1979.

Jim Hamilton, Houston, for appellant.

James F. Hury, Jr., Dist. Atty., and Michael P. Heiskell, Asst. Dist. Atty., Galveston, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for arson. Punishment, enhanced by two prior felony convictions, was set at life.

 At the outset, appellant contends that the court erred in failing to strike for cause a prospective juror who "stated he felt he could not be fair."

The record reflects that during the voir dire examination of prospective juror Donald W. Rogers, the prosecutor asked, "Do you know of any reason why you couldn't be a fair and impartial juror in this case?" and Rogers responded, "I sure do." The prospective juror and counsel approached the bench, where the following transpired "outside the hearing of the jury panel":

"MR. ROGERS: In '62, in Chicago, my sister, who was pregnant, was killed by an arson. And, I don't know how, but they never caught the guy, but they found proof that the fire was deliberately set. They found gas in the basement—

"THE COURT: I take it, from that experience—could you take that from your mind before you could offer this defendant (inaudible).

"MR. ROGERS: One child, and my sister was pregnant—I don't know how I would feel about it.

"THE COURT: Well, I am sure you have very strong feelings about this particular offense, but what I am asking you is whether you can be a fair and impartial juror to this defendant in this case?

"MR. ROGERS: Well, I imagine I could. I just wanted to let you know what I had experienced.

"THE COURT: Yes, sir.

"MR. HEISKELL [prosecutor]: Mr. Rogers, if I told you that there was no injuries to any persons in this particular case—as I mentioned, our burden of proof is that he intentionally started this fire in this building, and there were no injuries or deaths, and, for that reason, would it be difficult for you—of course, your sister's situation, if you feel that you could deliberate in this case—

"MR. ROGERS: Yes, I just wanted you to know what the situation was. I think I could be a fair and impartial juror in regard to this defendant."

The testimony of Rogers on voir dire, when taken as a whole, does not reflect that he was disqualified from serving on the jury. *Freeman v. State,* Tex.Cr.App., 556 S.W.2d 287; *Adami v. State,* Tex.Cr.App., 524 S.W.2d 693.

Further, the record does not reflect that the appellant requested an additional challenge after he exhausted all of his peremptory challenges, or that the court would not have given an additional challenge if such request had been made. There is no showing that appellant was forced to take an objectionable juror. No error is shown. See *Adami v. State,* supra; *Williams v. State,* Tex.Cr.App., 481 S.W.2d 119.

 Appellant contends that the court erred in putting him to trial "on the sanity issue without allowing ten (10) days for preparation."

The record reflects that counsel was appointed to represent appellant, an indigent, on March 3, 1977.

On March 7, 1977, a hearing began on the competency of appellant to stand trial and on the following day the jury found that appellant was competent to stand trial.

On March 17, 1977, trial began on the merits and concluded at 6:35 p. m. March 18, 1977.

Article 26.04(b), V.A.C.C.P., provides:

"The appointed counsel is entitled to ten days to prepare for trial, but may waive the time by written notice, signed by the counsel and the accused."

In the instant case, no written waiver of the ten days to prepare for trial was executed by appellant and his counsel. Absent such a waiver, this Court has held that the failure to allow appointed counsel ten days to prepare for trial requires reversal on direct appeal without the necessity of showing harm or prejudice. *Griffin v. State,* Tex.Cr.App., 489 S.W.2d 290; *Pollinzi v. State,* Tex.Cr.App., 541 S.W.2d 445; *Hous-*

*ton v. State,* Tex.Cr.App., 490 S.W.2d 851; *Hayles v. State,* Tex.Cr.App., 507 S.W.2d 213; *McBride v. State,* Tex.Cr.App., 519 S.W.2d 433.

The question here presented is whether a hearing on the issue of competency to stand trial held less than ten days after the appointment of counsel comes within the mandatory requirement of Art. 26.04(b), supra.

Article 46.02, Sec. 2(a), V.A.C.C.P., provides:

"The issue of the defendant's incompetency to stand trial shall be determined in advance of the trial on the merits if the court determines there is evidence to support a finding of incompetency to stand trial on its own motion or on written motion by the defendant or his counsel filed prior to the date set for trial on the merits asserting that the defendant is incompetent to stand trial."

The judgment finding appellant competent to stand trial recites that a motion to try the issue of incompetency "was presented on behalf of the accused," a jury was selected, and the jury returned a verdict finding appellant competent to stand trial on March 8, 1977.

This Court has stated that the purpose of Art. 26.04, supra, is to protect an accused's right to have adequate time to prepare for trial. *Moore v. State,* Tex.Cr.App., 493 S.W.2d 844.

Article 46.02, Sec. 2(a), provides for a hearing in advance of trial to determine the sole issue of whether an accused is competent to stand trial. Said hearing is not a "trial" as that term is used in Art. 26.04(b), supra. We hold that a hearing on the question of an accused's competency to stand trial held within ten days after appointment of counsel does not require reversal under Art. 26.04(b), supra.

Lastly, appellant contends that the court erred in assessing life punishment "because there was no proof that the date of the 1969 offense was subsequent to the 1963 conviction."

The enhancement paragraphs of the indictment allege a conviction for breaking and entering a motor vehicle on the 14th day of May, 1969, in the 177th District Court of Harris County in Cause No. 136900, and a conviction for burglary on the 8th day of May, 1963, in the 174th Criminal District Court of Harris County in Cause No. 104900.

V.T.C.A. Penal Code, Sec. 12.42(d), provides: .

"If it be shown on the trial of any felony offense that the defendant has previously been finally convicted of two felony offenses, *and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final,* on conviction he shall be punished by confinement in the Texas Department of Corrections for life." [Emphasis added.]

This provision of our present code, like former Penal Code Art. 63, V.A.P.C., requires that the State prove that the accused's second previous felony conviction is for an offense committed after the first previous conviction became final.

Penitentiary papers were offered in evidence reflecting the convictions alleged and containing fingerprints identified as being the same as the known prints of appellant.

We find that appellant's testimony, coupled with the foregoing exhibits which are consistent with his testimony, is sufficient to prove that he committed the second prior offense after the conviction for the first prior offense had become final. The appellant testified as follows:

"Q. Danny, do you remember, on May 8, 1963, when you were convicted of burglary in the 174th District Court, of Harris County, Texas?

"A. Yes, sir.

"Q. And, how many years did you go to the penitentiary for that?

"A. Two years, sir.

"Q. And, after you got out, you then were convicted in 1969, of unlawfully breaking and entering a motor vehicle, is that correct?

"A. Yes, sir.

"Q. And, how many years did you serve for that?

"A. They gave me a three year sentence.

"Q. Now, you also recall, Danny, that, back in 1963, the two additional charges of burglary and another theft that you were convicted of at the same time that you were convicted on the other charges?

"A. Yes, sir. That happened the same night.

"Q. How many stores did you say you all burglarized?

"A. Broke into two stores, and we had a stolen car. I wasn't but 17 years old.

"Q. Now, you recall what happened back then, when you were convicted of that, don't you?

"A. It's kind of faded in my mind, but I remember most of it.

"Q. You also recall what happened in 1969—well, let me ask you. When did that take place in 1969, when you were in that car?

"A. It was in '68—it was the first part of '69, the first part of '69, I believe, or '68. I am not sure.

"Q. Okay.—

"A. If I said a certain day, I would be lieing.

"Q. All right. And, you recall what happened back then, too—

"A. Yes, sir, I had a jury trial."

No error is shown.

The judgment is affirmed.