Andres **CUESTA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 07–87–0314–CR.

Court of Appeals of Texas,
Amarillo.

Dec. 28, 1988.

Kent Birdsong, Amarillo, for appellant.

James A. Farren, Asst. Dist. Atty., Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and PIRTLE, JJ.

PIRTLE, Justice.

Appellant Andres Cuesta appeals from his conviction for sexual assault, second degree, and the jury-assessed punishment of twenty years confinement in the Texas Department of Corrections and a fine of $10,000. By eight points of error, appellant contends that his conviction should be reversed because (1) he was tried under an indictment that was amended pursuant to an unconstitutional statutory provision; (2) he was tried under an indictment that was not the indictment of the grand jury; (3) the State engaged in purposeful discrimination through the use of its peremptory strikes; (4) his due process rights were violated by suppression of the existence of a photo line-up; (5) his due process rights were violated when the State lost or destroyed exculpatory evidence; (6) the prosecutor engaged in improper jury argument relating to the age of latent fingerprints which were introduced at trial (a point sub-

sequently waived by appellant); (7) the prosecutor engaged in improper jury argument concerning the appellant's accent; and (8) appellant was not provided prior notice of the amendment of his indictment. Because we conclude that appellant has not presented any reversible error, we affirm.

On June 16, 1987, the victim was awakened at approximately 2:00 a.m. when an intruder entered her room and forced her to leave her home. The victim testified that a man she identified as appellant told her that he had a gun and he did not want to use it. The victim further testified that appellant then sexually assaulted her. Appellant was connected to the offense by fingerprints and by the victim's identification.

Appellant was indicted by the Potter County grand jury on July 9, 1987, on a charge of sexual assault. Upon the State's motion, the indictment was amended on October 8, 1987, in two respects: (1) the words "sexual organ" were substituted for the word "vagina," and (2) the phrase "and [the victim] believed that said defendant had the present ability to execute said threats" was added. On November 16, 1987, the case proceeded to trial and on November 19, 1987, the jury returned a verdict of guilty.

■ By his first two points of error, appellant challenges the constitutionality of Articles 28.10 and 28.11 of the Texas Code of Criminal Procedure,[1] asserting that his conviction should be reversed because he was tried under an indictment that was amended pursuant to those articles. Although appellant did not raise the present challenges in the trial court, questions involving the constitutionality of a statute upon which a defendant's conviction is based should be addressed by this Court, even though such issues are being raised for the first time on appeal. *Rabb v. State*, 730 S.W.2d 751, 752 (Tex.Crim.App.1987). Accordingly, we will address appellant's constitutional challenges.

■ In point of error number one, appellant asserts that Articles 28.10 and 28.11 are unconstitutional because they violate the separation of powers provision of Article II, Section 1 of the Texas Constitution. Appellant reasons that, because the articles at issue allow a matter of form or substance in an indictment to be amended at any time before trial, the Legislature has unconstitutionally encroached upon the exclusive power of the judiciary, acting by and through the grand jury, to make the findings necessary to return an indictment.

Article 28.10, as amended, provides as follows:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

Article 28.11 provides: "All amendments of an indictment or information shall be made with the leave of the court and under its direction." We conclude that appellant's separation of powers argument is without merit. The Legislature has done nothing more than follow its constitutional mandate by enacting Articles 28.10 and 28.11. Article V, Section 12(b) of the Texas Constitution specifically provides that the practice and procedures relating to the amendment of indictments shall be "as provided by law." The legislative branch, by enacting these provisions, has merely adopted a procedure by which one tribunal of the judicial branch, the trial court, may amend an in-

---

1. Tex.Code Crim.Proc.Ann. art. 28.10 (Vernon Supp.1988) & art. 28.11 (Vernon 1966).

dictment originally returned by another tribunal of the judicial branch, the grand jury. Accordingly, point of error number one is overruled.

■ By his second point of error, appellant asserts that Articles 28.10 and 28.11 are unconstitutional because they conflict with the provisions of Article I, Section 10 and Article V, Section 12(b) of the Texas Constitution. Article I, Section 10 provides that: "No person shall be held to answer for a criminal offense unless under an indictment by a grand jury." Appellant reasons that his constitutional right to indictment by grand jury was violated when the State amended the indictment with the approval and under the direction of the trial court. He concludes that he was indicted by the State and by the trial court, not by the grand jury.

Appellant further argues that matters of substance, as distinguished from matters of form, may not be amended and that the amendment in question was violative of his constitutional rights because it involved an amendment as to substance. In order to address appellant's contention, we need not determine whether the amendment was one of form or substance, as such distinctions were eliminated by the amendments to Article 28.10.[2] We conclude that, effective December 1, 1985, indictments may be constitutionally amended as to matters of form or substance. Appellant was originally indicted by the grand jury as required by Article I, Section 10 of the Texas Constitu-

tion. The grand jury's indictment was amended as contemplated by Article V, Section 12(b). Point of error number two is overruled.

■ In his third point of error, appellant contends that the trial court erred in denying his motion to dismiss the jury, alleging that the prosecutor engaged in purposeful discrimination through the use of its peremptory strikes against members of appellant's race, in violation of appellant's constitutional rights under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). Appellant contends that the prosecution selectively exercised peremptory challenges against three prospective black jurors, thereby preventing any blacks from serving on the panel. Because appellant failed to establish purposeful discrimination, point of error number three is overruled.

■ In order to fully appreciate this Court's ruling, it is necessary to briefly review *Batson*, its genesis and its progeny. We begin with the legal principle that the prosecution may not purposefully exclude members of a defendant's race from jury service solely because of their race. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Batson*, the Supreme Court reaffirmed this principle, and then went on to conclude that the quantum of proof required by *Swain* effectively immunized the prosecution's use of peremptory strikes from constitutional

---

**2.** On June 13, 1985, the Regular Session of the 69th Legislature approved S.B. No. 169, relating to the amendment of an indictment or information, thereby amending Tex.Code Crim.Proc. Ann. art. 28.10. Section 1 of S.B. No. 169 provided, in part, as follows:

\* \* \* \* \* \*

Article 28.10 AMENDMENT OF INDICTMENT OR INFORMATION. (a) After notice to the defendant, a matter of form *or substance* in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be

amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced. (emphasis added).
Act of June 13, 1985, ch. 577, § 1, 1985 Tex.Gen. Laws 2196, 2197.

Section 3 of S.B. No. 169 provided that the act would take effect December 1, 1985, but only if the constitutional amendment proposed by S.J. R. No. 16, 69th Legislature, Regular Session, 1985, was approved by the voters. S.J.R. No. 16 was approved in an election held November 5, 1985.

scrunity. To rectify this problem, the Supreme Court set out a lesser burden of proof through which a defendant could establish a prima facie case of purposeful discrimination. Under *Batson*, a defendant may establish a prima facie case of purposeful discrimination in the selection of the petit jury by showing that (1) he is a member of a cognizable racial group, (2) the prosecution exercised peremptory challenges to remove members of the defendant's race from the venire, and (3) these facts and any other relevant circumstances raise an inference that the prosecution used peremptory challenges to exclude members of the venire from the petit jury because of their race. *Batson*, 476 U.S. at 95–98, 106 S.Ct. at 1722–23, 90 L.Ed.2d at 87–88.

The Supreme Court went on to state that "[o]nce the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors," and "[the] explanation [must be] related to the particular case to the tried." *Batson*, 476 U.S. at 98, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Since *Batson*, a number of Texas cases have delineated standards by which the adequacy of race-neutral explanations should be judged.[3]

If the protections afforded by *Batson* are to be given any substantive meaning, the prosecution must give clear and reasonably specific explanations of its legitimate reasons for exercising the challenges. *Batson*, 476 U.S. at 96–99 n. 20, 106 S.Ct. at 1723–24 n. 20, 90 L.Ed.2d at 88–89, n. 20. The trial judge must attempt to ascertain the subjective intent of the prosecutor, accepting adversarial intuition, while rejecting racial motivation. Given accusations of purposeful discrimination, and race-neutral explanations for the exercise of peremptory challenges, the trial court has the duty to determine whether the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 96–99, 106 S.Ct. at 1723–24, 90 L.Ed.2d at 88–89.

If the prosecutor's race-neutral explanations are accepted by the trial court, the burden shifts back to the accused to persuade the trial judge, by a preponderance of the evidence, that the allegations of purposeful discrimination are true in fact. *Tompkins v. State*, No. 68,870 (Tex. Crim.App., October 7, 1987) (not yet reported), *cert. granted* — U.S. —, 108 S.Ct. 1727, 100 L.Ed.2d 192 (1988). If the defendant attempts to contradict, impeach, or rebut the State's race-neutral explanations, an issue of fact is presented and it is the trial judge's responsibility, as the fact finder, to weigh the evidence and determine whether purposeful discrimination has been established. *Tompkins*, slip op. at 8; *Keeton v. State*, 749 S.W.2d 861, 865–68 (Tex.Crim.App.1988) (*"Keeton II"*). The seriousness of this duty was expressed by the Court of Criminal Appeals in *Tompkins*, wherein it stated:

[W]e remind trial judges who are confronted with the issue [of whether the prosecution has purposefully discriminated against the defendant through the use of peremptory strikes] that in their capacities as fact finders the truth of a racially-neutral explanation should be judged in part by its plausibility. A trial judge may not abdicate his responsibility to decide whether a peremptory challenge was racially motivated, nor may he leave such questions to an appellate resolution. He is the fact finder in such matters, and must find facts fairly and judiciously, according to the burdens of proof prescribed by law.

---

**3.** See, e.g., *Keeton v. State*, 724 S.W.2d 58 (Tex. Crim.App.1987) (*"Keeton I"*); *Henry v. State*, 729 S.W.2d 732 (Tex.Crim.App.1987); *Tompkins v. State*, No. 68,870, (Tex.Crim.App., October 7, 1987) (not yet reported), *cert. granted* — U.S. —, 108 S.Ct. 1727, 100 L.Ed.2d 192 (1988); *Keeton v. State*, 749 S.W.2d 861 (Tex.Crim. App.1988) (*"Keeton II"*); *Rijo v. State*, 721 S.W.2d 562 (Tex.App.—Amarillo 1986, no pet.); *Rodgers v. State*, 725 S.W.2d 477 (Tex.App.— Houston [1st Dist.] 1987, pet. ref'd); *Adams v. State*, 740 S.W.2d 60 (Tex.App.—Dallas 1987, no pet.); *Stewart v. State*, 748 S.W.2d 543 (Tex. App.—Dallas 1988, no pet.); *Levy v. State*, 749 S.W.2d 176 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd); *Seubert v. State*, 749 S.W.2d 585 (Tex. App.—Houston [1st Dist.] 1988, no pet.); *Jones v. State*, 756 S.W.2d 376 (Tex.App.—Houston [14th Dist.] 1988, no pet.).

*Tompkins,* slip op. at 11. Since the trial judge's findings will turn primarily on an evaluation of credibility, a reviewing court should consider the evidence presented in the light most favorable to those findings to determine if they are supported by the record, and they should only be reversed upon a showing that the trial judge abused his discretion. *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89, n. 21; *Tompkins,* slip op. at 7; *Keeton II,* 749 S.W.2d at 870.

In the context of this brief review of *Batson* and its progeny, we commence our review of appellant's contentions. Immediately following the conclusion of voir dire, and before the venire panel was dismissed, appellant presented to the court his *Batson* objection. The following colloquy constitutes the entire record of the *Batson* hearing that followed:

DEFENSE COUNSEL: Judge, from what I understand, two [sic] case law in this matter, I must file this motion prior to the jury being sworn, and that's why I presented it.

I'm aware that there was [sic] three black jurors within the purview up to Number 32. They were stricken by the State, not by the Defense, and I can have the Clerk testify to that at a later date.

I just need to present this prior to the jury being sworn and have you rule on it, and then I can call her to the stand and say the jury panel are [sic] white and no blacks on it, and testify as to who struck who.

THE COURT: Well, whatever you want to do, sir.

DEFENSE COUNSEL: Well, I've made my motion to dismiss the jury based on the fact that the State has stricken the only—

THE COURT: Who did they strike?

DEFENSE COUNSEL: Juror Number 6, Jesse Cortez; Juror Number 16, Donnie Gardner; Juror Number 23, Jessie Champion. And all of these were of the Negro race.

THE COURT: State have any response?

PROSECUTOR: Yes, Your Honor. The State would like to respond in the following manner.

We did—I would like to go down the list. We did strike—we struck Juror Number 6, Jesse Cortez primarily for the reason that he's a minister of the Immanuel Church, and on this type of case, it is the State's belief that ministers aren't appropriate to serve on these types of juries.

And in support of that, we would like to point out we struck a minister, which was Lois Beggs,[4] Juror Number 28, for essentially the same reason.

Secondly, we did strike Donnie Gardner for the reason that he is divorced, Your Honor, and has no children living at home.

The State, furthermore, also struck Jesse B. Smith, who is Juror Number 5, who is also divorced and who did not have any children—who does not have any children living at home.

Due to the fact that this case represents the abduction from the home of a, at the time, 17–year–old child, and the parents will be testifying in this case, we felt, and the State feels that it's to the State's advantage to leave jurors on there who are married and who do have children at home.

Furthermore, we did strike Jessie Champion due to the fact that she was not responsive to [the prosecutor's] questions, and we do believe that the record would bear that out.

And on top of that, she did respond in a much more favorable manner to [defense counsel's] questions, which he asked her at least three during voir dire.

She made direct eye contact with [defense counsel]. She averted her eyes when spoken to by [the prosecutor] and gave nonresponsive answers.

The State would further point out that we only used eight of our ten strikes,

---

4. The record reflects that juror number 28 was not a minister, but rather the spouse of a minis-ter.

and we did so based on the individual impressions that were left by the members of the jury panel, not on the basis of their race.

Finally, the State would point out that the State left on Olga Martinez, who is Number 26, who was struck by the Defense.

She is one of two jurors who raised their hand during voir dire, the other being Number 35, Victor Romero, who said that they could speak Spanish.

She certainly, with the name Martinez, is more akin to the background of this particular Defendant, being that he is Cuban, that he is Spanish-speaking, and—

DEFENSE COUNSEL: Judge, [the prosecutor] can't testify to this. He didn't talk to Mrs. Martinez, and I object to that being in the record.

PROSECUTOR: Your Honor, Mrs. Martinez raised her hand when he asked, do we have any Spanish-speaking people on the panel.

Now, I'd just like to point out that we left Mrs. Martinez on the panel, we did not strike her. If the State was systematically trying to exclude members of this particular Defendant's race and/or ethnic background, we certainly would have included all those with Spanish surnames, as well, on the jury list, which we did not, and we were not systematically trying to exclude members of the black race.

Rather, we merely struck the three that were in the first 32 members of this jury, based on the reasons I have aforestated, and for no other reasons.

DEFENSE COUNSEL: Judge, that's all I need for him to stipulate that he struck the blacks.

THE COURT: Motion is denied.

After reviewing the record, we find no evidence, either by stipulation or sworn testimony, establishing the race of the jurors who were peremptorily challenged, or establishing any other relevant circumstances necessary to raise a prima facie case. *See Price v. State*, 726 S.W.2d 611, 613 (Tex.App.—Houston [14th Dist.] 1987,

no pet.); *Singleton v. State*, 751 S.W.2d 316, 318 (Tex.App.—Houston [14th Dist.] 1988, no pet.). Because appellant failed to make a prima facie showing of purposeful discrimination, the State was not required to come forward with race-neutral explanations for striking potential jurors.

■ Moreover, we note that even if the trial court had assumed that appellant suggested a prima facie case of purposeful discrimination, the prosecution did present, albeit meager, race-neutral explanations. Under *Batson, Tompkins,* and *Keeton II,* it was then the burden of appellant to persuade the trial court that the allegations of purposeful discrimination were true in fact by a preponderance of the evidence. At the *Batson* hearing, counsel for appellant gave no indication that he wanted the trial judge to consider the plausibility or credibility of the race-neutral explanations offered by the prosecution. For instance, no attempt was made to discredit the explanations based upon the manner in which similarly-situated jurors of different races were treated. Had the matter been pressed, by cross-examination of the prosecutor or otherwise, the trial court might have been persuaded that the prosecutor's explanations were constitutionally infirm. In view of the record, we are not persuaded to disturb the trial court's implicit findings and consequent ruling. Because of the state of the record before us, and because of the burdens of proof prescribed by existing case law, we conclude that appellant failed to establish purposeful discrimination by the prosecution in the use of its peremptory challenges. Point of error number three is overruled.

In his fourth point of error, appellant contends that his due process rights under the Fourteenth Amendment were violated by the State's suppression of a photo lineup. Relying upon *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), appellant argues that the failure to disclose this impeachment evidence is constitutional error because there was a reasonable probability that, had the evidence been disclosed to the defense, the result of

the proceeding would have been different. We disagree.

Appellant filed several pre-trial motions requesting the production of exculpatory evidence. Nothwithstanding these motions, appellant was not informed, prior to trial, that the victim had been unable to identify her assailant from a photo line-up conducted the day after the sexual assault occurred. At trial, during an identification hearing outside the presence of the jury, the victim testified that an unknown police officer had presented her with a series of photographs, known as a photo line-up, and that she was unable to identify her assailant from those photographs. The court ruled that her identification of appellant as her assailant was based upon the event in question, and not the photo line-up, whereupon the case proceeded to trial before the jury.

Appellant argues that, if he had known that the victim had been unable to identify him from from the photo line-up, his trial preparation would have been different. He claims that his lack of knowledge concerning the line-up adversely affected the presentation of his case. He contends that, if evidence of the photo line-up had been disclosed prior to trial, a reasonable probability exists that the outcome of the trial would have been different. *See Bagley,* 473 U.S. at 677–78, 105 S.Ct. at 3381, 87 L.Ed.2d at 491.

■ Suppression of evidence by the prosecution favorable to the accused violates due process requirements if such evidence is material to the guilt of the accused or to the punishment assessed. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This remains true irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 86–87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. Adopting the materiality test enunciated by the Supreme Court in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court of Criminal Appeals quoted *Agurs* and stated:

> [U]nless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the

verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose.... The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. The Court stated that the test for materiality imposes a higher burden on the defendant than the harmless error standard. In determining materiality, the omission must be "evaluated in the context of the entire record," and constitutional error is committed only "if the omitted evidence creates a reasonable doubt that did not otherwise exist."

*Stone v. State,* 583 S.W.2d 410, 415 (Tex. Crim.App.1979); *see also Quinones v. State,* 592 S.W.2d 933 (Tex.Crim.App.1980); *Butler v. State,* 736 S.W.2d 668 (Tex.Crim.App.1987).

■ Under this test, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Bagley,* 473 U.S. at 677–78, 105 S.Ct. at 3381, 87 L.Ed.2d at 491.

■ Applying these standards to the present case, we cannot perceive how appellant could have used the undisclosed evidence in a manner that would have had an effect on the outcome of the trial. Appellant was able to cross-examine the victim about her failure to identify him from the photo line-up. He later called the detective who conducted the line-up as an adverse witness and questioned him at length concerning the failure of the victim to identify appellant. Given these facts, we conclude that the prosecution's failure to disclose the photo line-up was not material and had no effect on the outcome of appellant's trial. Point of error number four is overruled.

■ By his fifth point of error, appellant further contends that his due process

rights under the Fourteenth Amendment were violated because the prosecution failed to preserve the photographs used in the photo line-up. Determination of this point of error requires us to again consider "what might loosely be called the area of constitutionally-guaranteed access to evidence." *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193, 1203 (1982).

In *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the Supreme Court addressed the question of whether the Fourteenth Amendment requires that the prosecution preserve potentially exculpatory evidence. *Trombetta* arose out of a drunken driving prosecution in which the State introduced the results of an alcohol breath test. Counsel for the defense sought to suppress the test results on the ground that the State failed to preserve the breath samples used in the test. The Supreme Court rejected the defendant's argument, holding that the State's duty to preserve evidence must be limited to evidence that might be expected to play a significant role in the defense of the accused. 467 U.S. at 488–89, 104 S.Ct. at 2533–34, 81 L.Ed.2d at 422. Furthermore, to meet this standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent to the State before the evidence was lost or destroyed, and it must be of such nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Id.* In *Trombetta* the Supreme Court found no due process violation because (1) the officers acted in good faith and in accord with their normal practice, (2) in light of the procedures actually used, the chances that the evidence in question would have exculpated the defendants were slim, and (3) the defendants had alternative means of demonstrating their innocence. *Id.* In the present case, the chance that the photographs would have enabled appellant to exonerate himself is far less probable than in *Trombetta.*

In the most recent decision in this area of the law, the Supreme Court has held that the failure to preserve useful evidence does not constitute a denial of due process under the Fourteenth Amendment unless the defendant can show bad faith on the part of the State. *Arizona v. Youngblood,* —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). In *Youngblood,* the Supreme Court reaffirmed the principles of *Trombetta* and *Agurs.*

While appellant has presented some evidence that the State was aware of the existence and results of the photo line-up, we conclude that such evidence does not rise to the level of bad faith on the part of the State. Appellant was aware of the photo line-up in time to examine the victim and the detective who conducted the line-up. It is unlikely that appellant was prejudiced by the loss or destruction of the photographs. Point of error number five is overruled.

As noted earlier, appellant waived his sixth point of error. In his seventh point of error, appellant complains of two instances of allegedly improper jury argument by the prosecutor. First appellant asserts that reversible error occurred when the prosecutor asked the jury, "How many black males in Amarillo, Texas speak with a Cuban or Spanish accent?" Appellant argues that the prosecutor's question invites the jury to speculate about facts not in evidence, namely that appellant spoke with a Cuban or Spanish accent and whether appellant was the only black man in Amarillo with such an accent. Defense counsel objected to the rhetorical question, his objection was sustained, and the trial court immediately instructed the jury to disregard the question. Ordinarily, injury caused by improper jury argument is cured when the trial court sustains the defense objection and instructs the jury to disregard that portion of the argument. *Bell v. State,* 724 S.W.2d 780, 801 (Tex.Crim. App.1986). An exception does, however, exist when the argument is so inflammatory that its prejudicial effect cannot reasonably be removed by an instruction to disregard. *Green v. State,* 682 S.W.2d 271, 295 (Tex.Crim.App.1984). We have reviewed the argument in question and find that any error in the argument was not so

highly prejudicial that it could not be cured by the court's instruction.

Second, appellant asserts that reversible error occurred when the prosecutor rephrased the same question asking, "How many black men in Amarillo, using your common sense, speak Spanish?" Again, appellant's counsel objected. However, the court failed to rule and the prosecutor continued his argument. Since appellant did not obtain a ruling, he waived his objection. *Lewis v. State*, 664 S.W.2d 345, 349 (Tex.Crim.App.1984). Nevertheless, appellant contends that error was preserved because the argument was so prejudicial that an instruction to disregard would not have cured the error. Having reviewed the record, we conclude that there was evidence that appellant spoke with a Spanish accent and, therefore, no reversible error is shown. Point of error number seven is overruled.

By his eighth and final point of error, appellant contends that the trial court erred in denying his motion to dismiss the indictment because he was not provided notice as re-required by Article 28.10[5] before his indictment was amended. On October 8, 1987, the trial court signed an order amending appellant's indictment on motion by the State. Prior to voir dire, on November 16, 1987, appellant moved to dismiss the indictment based on the fact that no notice was provided to appellant prior to the amendment. At a hearing on appellant's motion, the State stipulated to the court that notice was given to appellant contemporaneously with presentation of the amendment to the court. The trial court denied appellant's motion.

Article 28.10 clearly states that an indictment may be amended as to a matter of form or substance, *after* notice to the defendant. The trial court's denial of appellant's motion to dismiss was, therefore, erroneous. In order to determine whether or not such error was reversible, we must look to the record to determine whether or not the error contributed to the conviction or to the punishment. Tex.R.App.P. 81(b)(2).

Ordinarily, failure to comply with the mandatory provisions of the Code of Criminal Procedure requires reversal without the necessity of determining harm to the defendant. *Beebe v. State*, 756 S.W.2d 759 (Tex.App.—Corpus Christi 1988, no pet.); *Peters v. State*, 575 S.W.2d 560 (Tex.Crim.App.1979). We distinguish *Beebe* and *Peters* from this case. In *Beebe*, the defendant requested additional time to respond to an amended indictment, but the trial court denied his request. It was held that the provision in Article 28.10 pertaining to additional time to respond to an amended indictment upon request of the defendant was mandatory and that when such a request is refused, reversible error is committed without a determination of harm or prejudice. In *Peters*, the Court of Criminal Appeals interpreted Article 26.04,[6] which entitles appointed counsel to 10 days to prepare for trial, and concluded that denial of this statutory period of time to prepare would constitute reversible error regardless of whether there was harm or prejudice.

Appellant does not complain of being denied time to respond; he merely complains that he was not provided prior notice that the indictment would be amended. We conclude that the mandatory language of Article 28.10 interpreted in *Beebe* is clearly distinguishable from the "after notice" issue involved herein. In order to be reversible error, we must determine that the State's failure to provide prior notice contributed to appellant's conviction or punishment.

Appellant argues that the *amendment* contributed to the conviction because, but for the amendment, the State would have had a more onerous burden of proof. Appellant has confused the amendment however, with *notice* of the amendment. We conclude beyond a reasonable doubt that the State's failure to provide appellant with notice prior to the amendment did not

---

5. Tex.Code Crim.Proc.Ann. art. 28.10 (Vernon Supp.1988).

6. Tex.Code Crim.Proc.Ann. art. 26.04 (Vernon Supp.1988).

contribute to the conviction or to the punishment. No reversible error being shown, point of error number eight is overruled.

Having reviewed and overruled appellant's eight points of error seriatim, we conclude that no reversible error has been presented. Accordingly, we affirm the judgment of the trial court.