IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-570-CR





THE STATE OF TEXAS,



 APPELLANT


vs.





JEFFREY MORALES,



 APPELLEE



 




FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY



NO. 350-254, HONORABLE WILFRED AGUILAR, JUDGE PRESIDING



 




 This is an appeal by the State from the trial court's mid-trial order granting
appellee's pretrial motion to dismiss the information and the cause with prejudice. See Tex. Code
Crim. Proc. Ann. art. 44.01(a)(1) (West Supp. 1992). Appellee was charged by information with
the offense of a Class A misdemeanor assault. Tex. Penal Code Ann. § 22.01 (West 1989). The
issue presented is whether the trial court had the authority to dismiss the cause based on appellee's
dismissal motion in which he claimed his due process and due course of law rights under the
federal and state constitutions were violated because the State did not preserve a non-custodial
tape-recorded interview of appellee by a police officer. We will reverse.

 Appellee filed a pretrial motion to dismiss the cause with prejudice. He alleged that
the unpreserved tape recording was exculpatory in nature, that it raised the issue of self-defense,
and claimed that he would suffer immeasurable harm as a result of not being able to rely upon the
recording in presenting his defense. Prior to trial, the trial court conducted a hearing on
appellee's motion and took the matter under advisement. The State then presented its case-in-chief, that consisted of the testimony of the complainant, Dylan Preas, and Jason Eckstrom, who
was seated near Preas at the time of the assault, but who was not otherwise involved. The tape
recording was not mentioned in the presentation of the State's evidence. Appellee then renewed
his motion to dismiss based on the allegations in his motion. (1) The trial court overruled the
dismissal motion. Sergeant Rodriguo Herrera of the Austin Police Department was the first
defense witness. He had taped the interview with appellee. When he was asked on direct
examination about the interview, the trial court removed the jury and reminded counsel that a
motion in limine had been granted prohibiting the parties from inquiring about the fact that
appellee had a brother who was a member of the Austin Police Department. The colloquy that
followed led to a reconsideration of the dismissal motion. The trial court then granted the motion
and terminated the prosecution.

 With this background, we shall examine the facts underlying the trial court's action
in dismissing the information. At the pretrial hearing on appellee's motion to dismiss, Sergeant
Herrera testified that in his investigation of the assault on Preas that occurred on August 11, 1990,
he interviewed Preas on August 14, 1990, and that he then filed aggravated assault charges against
appellee. Later, at Herrera's request, appellee came to the police station. After being warned by
Herrera of his rights, appellee indicated his willingness to have the interview taped. Herrera
explained that some but not all interviews by the Austin Police Department are tape-recorded, and
that in the instant case he decided to use a tape. This was in accordance with normal practice of
the Austin Police Department. After the interview, the tape was placed in the case file. Herrera
revealed that during his investigation he learned that the six or eight men, who had later joined
in the assault upon the complainant, were gang members who had had previous difficulty with the
law. Herrera stated that when this fact, among others, was relayed to the mother of the
complainant, the mother indicated that "they" wanted to drop the charge against appellee. Herrera
told the complainant's mother that she would have to contact the district attorney's office for that
purpose. Assuming that the case was being dismissed, Herrera stated that at a later date he reused
the tape in another interview and taped over the interview with appellee. Herrera explained that
tapes not being held as evidence were reused in this manner.

 Herrera acknowledged that he could not recall everything that was said during the
interview but believed that he could recall most of the conversation. Herrera stated that appellee
admitted hitting the complainant "because he (complainant) was messing with my girl." Appellee
explained that his girlfriend had been receiving calls from the complainant; that he (appellee) was
tired of the complainant; that he saw the complainant at a party and walked up to the complainant;
that complainant jumped off a wall and threw a cigarette down; and that he (appellee) hit the
complainant. Appellee explained to Herrera, "[T]hen a bunch of guys came in and starting
beating up the victim."

 Herrera testified that during the interview he told appellee that he did not believe
appellee's story that he had not talked to the other assailants before the assault, or appellee's
statement that he had not consulted with his brother, an Austin police officer, prior to the
interview. (2)

 Herrera did not consider the evidence obtained to be exculpatory. He did not recall
any statement by appellee that he acted in self-defense. He did recall that appellee took it to be
"a move of aggression" when the complainant jumped off a rock wall and threw down a cigarette. 
Herrera could not recall that appellee stated that the complainant had "flicked a cigarette" at
appellee and "bowed up," but admitted it could have been said.

 Appellee testified for the limited purpose of the pretrial hearing. He admitted that
Sergeant Herrera had given him warnings about his rights and that he had agreed to have the
interview taped. Appellee revealed that he told Herrera that he had hit the complainant and why. 
Appellee testified that he told Herrera that he had approached the complainant who was sitting on
a rock wall with a friend, told him that they needed to talk, and informed the complainant to quit
calling appellee's girlfriend, harassing her, and driving by her house. Appellee stated that he
revealed to Herrera that at this point the complainant stood up, flicked a cigarette on him, and said
that "he was not scared of me"; that the complainant "stood up straight" and his chest was out;
and that he (appellee) felt that the complainant was getting ready to hit him, so he hit the
complainant.

 Appellee said that he told Herrera the "black guys," who later joined the attack on
the complainant, were individuals with whom he had attended high school, but that he had not
talked to them prior to the confrontation with the complainant. Appellee stated he had given
Herrera the names of several witnesses and told him where they were standing at the time of the
incident. Appellee stated that he "pretty much so" remembered the conversation with Herrera,
but when asked if there was anything that had been said in the interview that had not been related
by Herrera or by him, appellee replied he would have to hear the tape, which had not been
preserved.

 Appellee testified that he was permitted to leave and that Herrera promised to
contact him if a warrant was issued to give him an opportunity to turn himself in to the proper
authorities. Appellee stated he was never called nor arrested for the charged offense. Neither
party contends that there was custodial interrogation. (3) See Oregon v. Mathison, 429 U.S. 492
(1977).

 At the conclusion of the pretrial hearing, the trial court took the matter under
advisement. When the State rested its case-in-chief, appellee reargued his dismissal motion and
argued that he was going to have to waive his Fifth Amendment privilege "against testifying" to
get his defense before the jury because the State had not preserved the tape-recorded interview. 
The State argued that appellee had failed to show bad faith on the part of the police and that the
statements made were non-exculpatory and inadmissible hearsay. Nevertheless, the prosecutor
observed that Sergeant Herrera was present to testify as to his recollections of the interview, and
further "agreed to stipulate to anything defense counsel believes was said by the defendant to
Sergeant Herrera, whether it was said or not." The offer was declined because "the jury is
entitled to hear what demeanor they can pick up from the recorded statement . . . the tone of his
(appellee's) voice . . . ." Appellee was aware at this time that the tape was no longer in existence. 
The trial court denied the motion to dismiss the cause. Later, during the presentation of the case
for the defense, the trial court reconsidered and granted the pretrial motion to dismiss and
terminated the prosecution.

 Generally speaking, a court's authority to act is limited to those actions authorized
by constitution, statute, or common law. State v. Johnson, 821 S.W.2d 609, 612 (Tex. Crim.
App. 1991). In addition to specific power to act conferred by constitutional or statutory provision
or common law, all courts have inherent authority to take certain actions. Eichelberger v.
Eichelberger, 582 S.W.2d 395, 398 n.1 (Tex. 1973) (a court has inherent judicial power that it
may call upon to aid in the exercise of its jurisdiction, in the administration of justice, or in the
preservation of its independence and integrity). Courts also have implied authority to act arising
from specific grants of power. Johnson, 821 S.W.2d at 612. Thus, a court may take a particular
action only if that action is authorized by constitutional provision, statute, or common law, or the
power to take the action arises from an inherent or implied power. Id.

 We turn now to the question of whether a trial court has the authority to dismiss
a criminal case. It has been consistently held that, in the absence of constitutional or statutory
authority, a trial court cannot dismiss a prosecution except on the motion of the prosecuting
attorney. Wallace v. State, 170 S.W.2d 762, 764 (Tex. Crim. App. 1943); State v. Shelton, 802
S.W.2d 80, 81 (Tex. App.--Austin 1990), vacated on other grounds, 830 S.W.2d 605 (Tex. Crim.
App. 1992); State v. Gray, 801 S.W.2d 10, 11 (Tex. App.--Austin 1990, no pet.); State v. Fox,
772 S.W.2d 455, 457 (Tex. App.--Beaumont 1989, no pet.). However, trial courts have implicitly
been granted the authority to dismiss a criminal prosecution without a motion by the prosecuting
attorney when an exception to the charging instrument is granted or when the defendant's special
plea is sustained. See Tex. Code Crim. Proc. Ann. arts. 27.01-28.14 (West 1989); Gray, 801
S.W.2d at 11; see also State v. Eaves, 800 S.W.2d 220 (Tex. Crim. App. 1990). This is also true
"when a defendant has been denied a speedy trial or, pursuant to article 32.01, when a defendant
is detained and no charging instrument is properly presented." Johnson, 821 S.W.2d at 612 n.2;
see also Zani v. State, 701 S.W.2d 249, 253 (Tex. Crim. App. 1983) (motion to dismiss
indictment is correct means of challenging a prosecution prior to trial where the defendant had
previously been granted immunity).

 Texas Code Crim. Proc. Ann. art. 44.01(a)(1) (West Supp. 1992) permits the State
to appeal an order that dismisses all or any portion of an indictment, information, or complaint. 
The statute does not, however, authorize the trial judge to dismiss a criminal case without the
consent of the prosecutor. Johnson, 821 S.W.2d at 613; Chandler, 767 S.W.2d 211, 212 (Tex.
App.--Eastland 1989, no pet.).

 In Johnson, the Court of Criminal Appeals made plain its holding: "In sum, there
is no general authority, written or unwritten, inherent or implied, which would permit a trial court
to dismiss a case without the prosecutor's consent." Johnson, 821 S.W.2d at 613; see also Barre
v. State, 826 S.W.2d 722, 725 (Tex. App.--Houston [14th Dist.] 1992, pet. ref'd). Harris County
District Attorney's Office v. Burns, 825 S.W.2d 198, 201 (Tex. App.--Houston [14th Dist.] 1992,
pet. ref'd). We conclude that in the instant case the trial court was without authority to dismiss
the information without the prosecutor's consent.

 If it can be argued that the trial court had authority to support its action, appellee
was not entitled to the remedy he sought, i.e., dismissal of the information. This leads to our
consideration of "what might loosely be called the area of constitutionally guaranteed access to
evidence." United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982); Cuesta v. State, 763
S.W.2d 547, 555 (Tex. App.--Amarillo 1988, no pet). The question presented is one involving
a failure to preserve potentially exculpatory evidence, not a failure to disclose evidence. See
Brady v. Maryland, 373 U.S. 83, 87 (1963); United States v. Bagley, 473 U.S. 667, 676 (1983). In Cuesta, the court wrote:



In California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413
(1984), the Supreme Court addressed the question of whether the Fourteenth
Amendment requires that the prosecution preserve potentially exculpatory
evidence. Trombetta arose out of a drunken driving prosecution in which the State
introduced the results of an alcohol breath test. Counsel for the defense sought to
suppress the test results on the ground that the State failed to preserve the breath
samples used in the test. The Supreme Court rejected the defendant's argument,
holding that the State's duty to preserve evidence must be limited to evidence that
might be expected to play a significant role in the defense of the accused. 467
U.S. at 488-89, 104 S.Ct. at 2533-34, 81 L.Ed.2d at 422. Furthermore, to meet
this standard of constitutional materiality, the evidence must possess an exculpatory
value that was apparent to the State before the evidence was lost or destroyed, and
it must be of such nature that the defendant would be unable to obtain comparable
evidence by other reasonably available means. Id. In Trombetta the Supreme
Court found no due process violation because (1) the officers acted in good faith
and in accord with their normal practice, (2) in light of the procedures actually
used, the chances that the evidence in question would have exculpated the
defendants were slim, and (3) the defendants had alternative means of
demonstrating their innocence. Id.



Cuesta, 763 S.W.2d at 555; see also Gardner v. State, 745 S.W.2d 955, 958-59 (Tex.
App.--Austin 1988, no pet.).

 More recently, the Supreme Court has held that the failure to preserve potentially
useful evidence does not constitute a denial of due process under the Fourteenth Amendment
unless the defendant can show bad faith on the part of the State. Arizona v. Youngblood, 488 U.S.
51 (1988); see also United States v. Galvan-Garcia, 872 F.2d 638, 641 (5th Cir. 1989); Saldana
v. State, 783 S.W.2d 22, 23 (Tex. App.--Austin 1990, no pet.).

 In the instant case, the trial court expressly declared that there was no bad faith on
the part of the State, and we do not understand appellee to contend otherwise. This is supported
by the record. In this context, bad faith would be shown if the State knew the item destroyed was
exculpatory. See Youngblood, 488 U.S. at 56; Trombetta, 467 U.S. at 488. Officer Herrera had
no knowledge of the exculpatory value, if any, of the unpreserved tape. He reused the tape in
accordance with normal practice after understanding the case would be dismissed by the
complainant. Based on the testimony of Herrera and appellee himself, the taped interview must
be viewed as highly incriminating. Appellee acknowledged that he initiated the confrontation and
struck the first blow. The chances that the evidence in question would have exculpated appellee
were slim. Exculpatory evidence is generally that evidence which would clear or tend to clear
the accused from fault or guilt. County v. State, 812 S.W.2d 303, 313 (Tex. Crim. App. 1989);
Davis v. State, 474 S.W.2d 466, 467-68 (Tex. Crim. App. 1971); Moore v. State, 60 S.W.2d
453, 454 (Tex. Crim. App. 1933). For the specific purposes of the rule constraining the State
from disposing of potentially exculpatory evidence, the rule is the same. Gibson v. State, 718
P.2d 283, 283 (Idaho 1986).

 The statements supposedly made in the taped interview and upon which appellee
relies would not have established self-defense (4) as a matter of law. See Daniel v. State, 668
S.W.2d 390, 393 (Tex. Crim. App. 1984). The statements, however, may have been sufficient
for submitting the issue of self-defense to the jury. Id. It was undisputed that appellee brought
about the confrontation. Appellee relies on the testimony that the complainant got off of the wall,
flicked a cigarette at or on appellee, stood up straight and "bowed" his chest, and said he was not
afraid of appellee. Appellee testified that he told Herrera that at this point in the confrontation
he felt that the complainant was getting ready to hit him, and he regarded complainant's actions
as a "move of aggression." Appellee insisted at trial that without this "exculpatory" evidence he
could not raise the issue of self-defense without surrendering his privilege against self-incrimination. Of course, the use of force against another is not justified by verbal provocation
alone or, with certain exceptions, when the other's use or attempted use of unlawful force has
been provoked. See Tex. Penal Code Ann. § 9.31(b)(1) & (4) (West 1974).

 Even if the statement to Herrera could be considered "exculpatory," as self-serving
out-of-court statements, they were inadmissible hearsay. Hafdahl v. State, 805 S.W.2d 396, 402
(Tex. Crim. App. 1990), cert. denied, U.S. , 111 S. Ct. 2250 (1991). It is the general
rule in Texas that self-serving declarations are not admissible in evidence as proof of the facts
asserted. Allridge v. State, 762 S.W.2d 146, 152 (Tex. Crim. App. 1988), stay denied, 488 U.S.
1026, cert. denied, 489 U.S. 10401 (1989); 24 Tex. Jur. 3d Criminal Law § 3058 (1982). 
Exceptions to this general rule were noted in Singletary v. State, 509 S.W.2d 572, 576 (Tex.
Crim. App. 1974). The statements in question do not qualify under the "res gestae" exception. 
They were made in an out-of-court setting days after the alleged offense when appellee had had
ample time to consider and calmly reflect on what had happened. The statements also fail to pass
muster as a part of a statement or conversation previously proven by the State. The State made
no effort to present any evidence of the taped interview in its case-in-chief or at any other time. 
The third exception involves statements that are necessary to explain or contradict acts or
declarations first offered by the State. The theory behind the third exception was explained in
Reado v. State, 690 S.W.2d 15, 17 (Tex. App.--Beaumont 1984, pet. ref'd). It does not mean that
all self-serving statements by an accused are admissible. Id. When the accused does not testify,
self-serving statements are not admissible in evidence when they merely contradict some act or
declaration first proffered by the State. Id. The statements must be necessary to explain or
contradict an act or declaration first offered by the State to prevent the fact finder from being
misled or perceiving a false, incorrect impression. Id.; see also Starks v. State, 776 S.W.2d 808,
811 (Tex. App.--Fort Worth 1989, pet. ref'd) (defendant, who elected not to testify at trial, was
not entitled to offer exculpatory statement made to police that contradicted same acts or
declarations first offered by the prosecution). In the instant case, appellee did not testify or show
that he was entitled to prevail under the third exception. Unless a defendant's self-serving
statements fall under any of the enumerated exceptions to the general rule, they are not admissible
into evidence. Allridge, 762 S.W.2d at 152. Appellee's self-serving statements were not
admissible under these circumstances even if they are considered as "exculpatory."

 Moreover, appellee had alternative means of demonstrating his innocence or raising
the issue of self-defense without having to testify himself. Self-defense may be raised by the
testimony of witnesses other than the defendant. Smith v. State, 676 S.W.2d 584, 586-571 (Tex.
Crim. App. 1984); Reed v. State, 703 S.W.2d 380, 384 (Tex. App.--Dallas 1986, pet. ref'd). 
Appellee told Herrera the names of several eye witnesses and explained where they were standing
at the time of the alleged offense. There was no showing that these witnesses were unavailable
at the time of trial. Eckstrom, who was sitting on the wall with the complainant but was not
involved in the incident, was a State's witness. Appellee had the opportunity to cross-examine
Eckstrom but he was unable to establish any evidence raising the issue of self-defense. Further,
the State offered to stipulate as to what the appellee claimed he said in the taped interview. The
offer was not accepted. It is clear that appellee was able or should have been able to obtain
comparable evidence by reasonable means. See Trombetta, 467 U.S. at 488. It is obvious from
this cold record that appellee's counsel was trying to get as much mileage as possible out of the
lack of preservation issue without waiving it. Counsel was painfully aware that if he succeeded
in getting the "exculpatory" evidence before the jury, the role of optional completeness would
come into play and permit the State to introduce the balance of the conversation with Herrera
which contained highly incriminating evidence. See Tex. R. Crim. Evid. 107. The failure to
preserve the taped interview did not constitute, under the presented circumstances, a violation of
due process or due course of law as claimed by appellee. Even if it can be said that the trial court
had authority to dismiss the information, his basis for doing so was erroneous. The State's point
of error is sustained.

 The district court's order dismissing the indictment and cause is reversed. The
cause is reinstated and remanded to the trial court for proceedings consistent with this opinion. 
The motion to dismiss was that of appellee. Such motion is assumed to remove any barrier to re-prosecution. Cf. Crawford v. State, 703 S.W.2d 655, 662 (Tex. Crim. App. 1986); Fields v.
State, 627 S.W.2d 714, 720 (Tex. Crim. App. 1982); Chvojka v. State, 582 S.W.2d 828, 830-31
(Tex. Crim. App. 1979); see also United States v. Divitz, 424 U.S. 600 (1976); United States v.
Jarn, 400 U.S. 470 (1971).



 

 John F. Onion, Jr., Justice

[Before Justices Powers, B. A. Smith and Onion*]

Reversed and Remanded

Filed: December 23, 1992

[Publish]


















* Before John F. Onion, Jr., Presiding Judge retired, Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1.   The motion was not urged as a motion for an instructed verdict.
2.   Herrera testified that he did not know appellee had a brother on the police force until
the time of the interview.
3.   Neither party makes reference to Tex. Code Crim. Proc. Ann. art. 38.22, § 3(b) (West
Supp. 1993), which requires the preservation of every electronic recording of any statement
made by an accused during a custodial interrogation. Obviously, neither party considered the
interview in question to have been custodial interrogation.
4.   Tex. Penal Code Ann. § 9.31(a) & (b) (West 1974) provides:


(a) Except as provided in Subsection (b) of this section, a person is justified
in using force against another when and to the degree he reasonably
believes the force is immediately necessary to protect himself against the
other's use or attempted use of unlawful force.

(b) The use of force against another is not justified:

 (1) in response to verbal provocation alone;

 (2) to resist an arrest or search that the actor knows is being made by a
peace officer, or by a person acting in a peace officer's presence and
at his direction, even though the arrest or search is unlawful, unless
the resistance is justified under Subsection (c) of this section;

 (3) if the actor consented to the exact force used or attempted by the
other; or

 (4) if the actor provoked the other's use or attempted use of unlawful
force, unless:

 (A) the actor abandons the encounter, or clearly communicates to the
other his intent to do so reasonably believing he cannot safely
abandon the encounter; and

 (B) the other nevertheless continues or attempts to use unlawful force
against the actor.