Arnold BARFIELD, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–05–00095–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 10, 2006.

Decided Sept. 27, 2006.

Craig L. Henry, Texarkana, for appellant.

Adam O. Fellows, James Elliott, Asst. Dist. Attys., Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Arnold Barfield, III, and Rickey Burns had been friends. But, in May 2003, their evening of partying turned deadly when Barfield fatally shot Burns.

Evidence showed that Barfield, Burns, and their dates first went to a Texarkana liquor store and then to a bar. At the bar, Barfield was reportedly loud and rowdy in responding to other guests' karaoke performances. Later, the four arrived at a friend's house, and Burns and Barfield had some sort of argument. No witness reported seeing Burns hit or push Barfield, but somehow Barfield ended up on the

ground. In response, Barfield walked to his own truck, where he retrieved a gun. Gala Cooper, who was in Barfield's truck at the time, said that, when Barfield came to the truck, Barfield said, "I don't have to put up with this [expletive]. I don't have to deal with this [expletive]." Cooper unsuccessfully struggled with Barfield over the gun. With control of the gun, Barfield turned toward Burns, who was standing with Tonda Barton, and shot him. When Barton screamed that Barfield had shot Burns, Barfield said, "I didn't hit anybody."

Barfield was ultimately charged with, and tried for, murder—causing the death of Burns by the alternative means of (A) "shooting him with a firearm," or (B) "knowingly commit[ting] or attempt[ing] to commit an act clearly dangerous to human life, discharging a firearm at or in the direction of" Burns. A Bowie County jury returned a guilty verdict and recommended a sentence of forty years, a sentence imposed by the trial court.

█ We affirm the trial court's judgment because we find the following on Barfield's challenges to that judgment: (1) the jury charge properly allowed the jury to convict based on alternate means of committing murder; (2) the jury charge sufficiently required unanimity on the sudden passion issue; (3) any error in amending the indictment was harmless; and (4) ineffective assistance of counsel is not established by the record.

*(1) The Jury Charge Properly Allowed the Jury to Convict Based on Alternate Means of Committing Murder*

█ Barfield complains of the trial court's charge to the jury, which allowed the jury to convict him of murder if it found either (A) he killed Burns intentionally or knowingly by shooting Burns with a firearm; or, alternatively, (B) he committed or attempted to commit an act clearly dangerous to human life—firing a firearm in the direction of, or at, Burns—and Burns died as a result.[1] Barfield contends the trial court erred because this charge allowed the jury to convict Barfield without coming to a unanimous decision on whether he committed murder. We reject these arguments because, in short, the charge properly presented the jury with two alternative ways of committing one offense, murder.

Barfield's complaint boils down to his assertion that the trial court's charge to the jury on guilt/innocence allowed a conviction on a choice of two crimes, murder or felony murder, without requiring a unanimous finding on either. The two acts the State ultimately charged Barfield with doing are described in subsections (b)(1) and (b)(3) of Section 19.02 of the Texas Penal Code:

(b) A person commits an offense [murder] if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to

---

1. Deadly conduct can be the underlying felony for felony murder. *Yandell v. State*, 46 S.W.3d 357, 361 (Tex.App.-Austin 2001, pet. ref'd); *Rodriguez v. State*, 953 S.W.2d 342 (Tex.App.-Austin 1997, pet. ref'd).

human life that causes the death of an individual.

Tex. Pen.Code Ann. § 19.02 (Vernon 2003). It has long been established that,

if but one transaction is involved, and the offense be one which may have been committed in any one of several ways, the pleader may charge in the indictment, in one count that such offense had been committed by doing this, and that, and the other, and there will be no duplicity, and need be but a verdict of guilty....

*Aguirre v. State,* 732 S.W.2d 320, 326 (Tex. Crim.App.1987) (op. on reh'g) (quoting *Mc-Arthur v. State,* 132 Tex.Crim. 447, 105 S.W.2d 227, 230 (1937) (op. on reh'g)). In *Aguirre,* the appellant was refused entrance to the house by his ex-wife, and he responded by firing a shotgun through the door, killing their daughter. Aguirre was charged with murder in two alternative paragraphs, the first invoking Section 19.02(a)(1)—alleging that he intentionally or knowingly caused the girl's death—and the second invoking Section 19.02(a)(3)— alleging that he caused her death in the course of committing criminal mischief, i.e., shooting through the door. Aguirre's conviction for felony murder was affirmed. "Because appellant's indictment did not allege different offenses but only ... different ways of committing the same offense, the court properly furnished the jury with a general verdict form." *Aguirre,* 732 S.W.2d at 326. *Aguirre* is directly applicable to the case before us.

Earlier this year, the Texas Court of Criminal Appeals was faced with a unanimity challenge and ruled that, where the charge was injury to a child, under Section 22.04 of the Texas Penal Code—but the defendant was accused alternatively of (1) striking the child, (2) failing to prevent another from injuring the child, and (3) failing to provide proper medical care for the child—the alternative allegations were just different ways to commit the single offense. *See Jefferson v. State,* 189 S.W.3d 305 (Tex.Crim.App.2006); *see also* Tex. Pen.Code Ann. § 22.04 (Vernon Supp. 2006). The *Jefferson* court quoted approvingly an opinion of the Wisconsin Supreme Court, *State v. Johnson,* 243 Wis.2d 365, 627 N.W.2d 455, 459–60 (2001), in using a two-part analysis for such a unanimity challenge: (1) examine the statute to determine whether the Legislature intended to define separate offenses or merely alternative ways to commit one offense, and (2) if the offending behavior merely constitutes alternative ways to commit one offense, consider whether that formulation denies the defendant the due process of law as stated by *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). *See Jefferson,* 189 S.W.3d at 311– 14. In a concurring opinion, Judge Cochran provided a grammar lesson on sentence structure, and then encapsulated the rule:

At a minimum, [the elements the jury must find, unanimously, beyond a reasonable doubt] are: the subject (the defendant); the main verb; and the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime); and the specific occasion (the date phrase within the indictment, but narrowed down to one specific incident regardless of the date alleged). Generally, adverbial phrases, introduced by the preposition "by," describe the manner and means of committing the offense. They are not the gravamen of the offense nor elements on which the jury must be unanimous.

*Jefferson,* 189 S.W.3d at 316 (Cochran, J., concurring). We are constrained by *Aguirre* and *Jefferson.*

Barfield urges us to reverse based on *Francis v. State,* 36 S.W.3d 121 (Tex.Crim.

App.2000), and *Ngo v. State*, 175 S.W.3d 738 (Tex.Crim.App.2005). In *Francis*, the State presented evidence of four incidents of indecency with a child by Francis: two incidents involved touching the victim's breast; two involved touching the victim's genitals. The charge instructed the jury that Francis could be found guilty if he were found to have "engage[d] in sexual contact by touching the breast or genitals of [the victim]." *Francis*, 36 S.W.3d at 124. Citing *Vernon v. State*, 841 S.W.2d 407 (Tex.Crim.App.1992), the *Francis* court held the two incidents of sexual contact were distinct criminal acts and not properly charged in a single disjunctive application paragraph. *Francis*, 36 S.W.3d at 124.

In *Ngo*, the Texas Court of Criminal Appeals held that the jury had to return a unanimous verdict on whether Ngo committed one of the charged offenses: (1) stealing Ms. Truong's credit card; (2) receiving her credit card, knowing that it was stolen and intending to use it fraudulently; or (3) fraudulently presenting her credit card with the intent to obtain a benefit. Because each of those acts constituted an independent criminal offense, merely allowing the jury to return a general verdict on whether Ngo committed one of these acts was error. *Ngo*, 175 S.W.3d at 744–45.

■ Barfield also cites *Clear v. State*, 76 S.W.3d 622 (Tex.App.-Corpus Christi 2002, no pet.). As in *Francis*, *Clear* involved allegations of several distinct criminal acts: penetration of the victim's sexual organ with Clear's finger, sexual organ, and more. Also, as in *Francis*, the charged acts are separate criminal acts, not appro-

priately charged in the disjunctive. *Francis*, *Ngo*, and *Clear* are inapposite to this discussion because Barfield's charge involved alternative means of committing a single offense.[2]

Barfield also complains that we cannot use *Kitchens v. State*, 823 S.W.2d 256 (Tex. Crim.App.1991), to affirm the trial court. Here is what we said recently about a similar point of error:

> [In *Kitchens* ], the Texas Court of Criminal Appeals held that, "It is appropriate where the alternate theories of committing the same offense are submitted to the jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted." [*Kitchens*, 823 S.W.2d] at 258, citing *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex.Crim. App. [Panel Op.] 1987) (op. on reh'g).

*Bethany v. State*, 152 S.W.3d 660, 667 (Tex.App.-Texarkana 2004, pet. ref'd).

There was no error in the trial court's charge to the jury. The charge appropriately submitted alternative ways of violating the applicable statute. The jury's verdict represents the necessary unanimous finding that Barfield murdered Burns under Section 19.02 of the Texas Penal Code.

*(2) The Jury Charge Sufficiently Required Unanimity on the Sudden Passion Issue*

■ Barfield also claims the trial court erred in not requiring the jury to come to a unanimous decision on the issue of sudden passion when deliberating on Barfield's punishment. If the jury had found Barfield acted under the influence of

---

**2.** "[I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission. That rule is not only constitutional, it is probably indispensable in a system that requires a unanimous jury verdict to convict." *Schad*, 501 U.S. at 649–50, 111 S.Ct. 2491 (Scalia, J., concurring) (citations omitted).

sudden passion when he killed Burns, the crime would have been punished as a second-degree felony. *See* TEX. PEN.CODE ANN. § 19.02(d). The charge included an instruction on sudden passion and a definition of that term. Only at the end of the charge did the word "unanimous" appear: "Your verdict must be by a unanimous vote of all members of the jury." Barfield concedes he did not object to the punishment charge and must establish egregious harm to obtain reversal.[3]

■ A jury's finding on sudden passion must be unanimous. *Sanchez v. State*, 23 S.W.3d 30, 33 (Tex.Crim.App.2000). The *Sanchez* trial court instructed the jury to find, unanimously, for Sanchez on the issue of sudden passion and, otherwise, to find against Sanchez on that issue.[4] The jury assessed a sentence of twenty-five years, more than the range for a second-degree felony, which would have been the range with a finding in Sanchez' favor on sudden passion. The trial court polled the jury and found that three jurors wanted to find in Sanchez' favor on the issue of sudden passion. But because of the trial court's instructions, the jurors had to find against Sanchez on the issue. *Sanchez*, 23 S.W.3d at 32. The Texas Court of Criminal Appeals held that Article 37.07 of the Texas Code of Criminal Procedure "requires unanimity with respect to the jury's preliminary vote on sudden passion." *Id.* at 34.

A similar result was obtained in *Newton v. State*, 168 S.W.3d 255, 257–58 (Tex.App.-Austin 2005, pet. ref'd). The *Newton* trial court had instructed the jurors to assess a prison term of five years to life unless they agreed that the appellant acted under the immediate influence of sudden passion arising from an adequate cause. This instruction did not condition the jurors' use of the five-to-life punishment range on a unanimous finding that the appellant did not act under the influence of sudden passion; instead, the harsher punishment range was made applicable in the absence of a finding in appellant's favor. *Id.* In reversing the trial court result, the Third Court of Appeals followed *Sanchez*. "If the jurors fail to agree on the sudden passion issue, the result is a mistrial." *Id.* at 256 (citing *Sanchez*, 23 S.W.3d at 33).

An important distinction exists in this case. While it is true the trial court's charge to the jury at punishment only generally required unanimity by stating, in the last paragraph, "Your verdict must be by a unanimous vote of all members of the jury," the first verdict form in the charge asked, "Do you, the jury, find by a preponderance of the evidence that on the occasion in question, at the time of the commission of offense for which the defendant is on trial, the defendant, Arnold Barfield, III, caused the death of Rickey Burns, while he, Arnold Barfield, III, was under the immediate influence of sudden passion arising from an adequate cause?" The jury answered, "no." Earlier this sum-

---

3. Egregious harm consists of errors affecting the very basis of the case, depriving the defendant of a valuable right, vitally affecting a defensive theory, or making the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App.1991); *Hall v. State*, 937 S.W.2d 580, 583 (Tex.App.-Texarkana 1996, pet. ref'd).

4. In *Sanchez*, the charge read: "an affirmative ('yes') answer on the issue [of sudden passion] submitted must be unanimous, but if the jury is not unanimous in reaching an affirmative answer, then the issue must be answered 'no.'" Nine jurors voted "no" and three "yes" on the issue of sudden passion. *See Sanchez v. State*, 1999 WL 173986, *6, No. 05–97–01389–CR, 1999 Tex.App. LEXIS 2352, at *19–20 (Tex.App.-Dallas Mar.31, 1999) (not designated for publication), *aff'd*, 23 S.W.3d 30 (Tex.Crim.App.2000).

mer, the Tyler Court of Appeals encountered a similar situation. As in Barfield's trial, the jury had been asked if it found the defendant had acted under the immediate influence of sudden passion, and a general instruction required the verdict to be unanimous. *See Latham v. State*, No. 12–05–00146–CR, 2006 WL 2065334, at *8 (Tex.App.-Tyler July 26, 2006, no pet. h.) (mem.op.) (not designated for publication). The Tyler court found this question and the separate, general instruction sufficient to ensure the jury was unanimous in its finding on the issue of sudden passion. *See id.* Likewise, in *Cartier v. State*, 58 S.W.3d 756 (Tex.App.-Amarillo 2001, pet. ref'd), the jury charge used the term "unanimous" only in the final paragraph; but a separate, special issue question asked the jury its finding on the issue of sudden passion, and the jury answered in the negative. *Id.* at 759–60. Here, the jury was submitted a special issue, asking only whether it found Barfield acted under the immediate influence of sudden passion. That term was defined in accordance with the Texas Penal Code. *See* Tex. Pen.Code Ann. § 19.02(a)(2), (d).

Because the trial court's charge appropriately guaranteed a unanimous finding on the sudden passion issue, no error is shown.

*(3) Any Error in Amending the Indictment Was Harmless*

Barfield also complains that the trial court erred in amending the indictment, then in not giving Barfield his requested ten days to prepare for trial after the amendment. Our analysis of Barfield's complaints must begin with a careful reading of the applicable statute. Article 28.10 of the Texas Code of Criminal Procedure provides as follows:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

Because we find that the way the trial court amended the indictment, even if error, was harmless, we will overrule this assertion of error.

Barfield was indicted by a Bowie County grand jury September 18, 2003. The original indictment charged Barfield with murder:

On or about May 16, 2003, [Barfield] did unlawfully then and there, intentionally or knowingly, cause the death of an individual, Rickey Burns, by shooting him with a firearm;

PARAGRAPH TWO: .... did then and there intentionally, with the intent to cause serious bodily injury to Rickey Burns, commit an act clearly dangerous to human life, namely, shooting him with a firearm, which caused the death of Rickey Burns.

This language tracks Section 19.02(b)(1) and (2), charging Barfield with "regular" murder (Section 19.02(b)(1)) and "serious bodily injury murder" (Section 19.02(b)(2)). On March 16, 2005, the State filed a mo-

tion to amend the indictment, with an attached proposed amended indictment, which abandoned the "serious bodily injury murder" charge and charged Barfield with "felony murder" under Section 19.02(b)(3). *See* TEX. PEN.CODE ANN. § 19.02(b)(3). The proposed new paragraph of the amended indictment alleged:

> And it is further presented in and to said Court that in the County of Bowie and State of Texas, on or about May 16, 2003 ... Barfield ... did, unlawfully then and there intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, namely, discharging a firearm at or in the direction of Rickey Burns, that caused the death of Rickey Burns, and the said defendant was then and there in the course of and in furtherance of the commission or attempted commission of a felony offense, to-wit: deadly conduct.

The certificate of service on the State's motion to amend represents the motion was sent to Barfield March 15.

On March 16, 2005, the trial court signed an order amending the indictment, using the new language as proposed by the State.

On March 28, 2005, at a pretrial hearing the day before voir dire and trial began, Barfield's counsel stated he did not receive a copy of the trial court's order amending the indictment.[5] The certificate of service on the State's motion to amend indicates the prosecution sent the motion to amend and proposed amended indictment to Barfield's attorneys March 15, 2005. The attorney for the State produced the facsimile transmission confirmation report, listing two fax numbers, and stated that the facsimile transmission of the motion "went through" March 15. The trial court, apparently reading from the court's file, noted that the State's motion was filed with the clerk at 10:36 a.m., March 16, and that the trial court signed the order an hour later. The trial court also noted that, when the State's motion arrived on the trial court's desk March 16, the court "counted the days" in order to give Barfield ten days' notice and avoid any need for a continuance. On March 29, counsel for Barfield did say, as they continued pretrial hearings just before voir dire, that, on March 15, he had received the State's motion to amend with its proposed order.

■ Barfield's complaints about the indictment raise two issues. In the first, he asserts the indictment was never properly amended. We disagree.

■ The Texas Court of Criminal Appeals has held that "[n]either the [State's] motion [to amend] nor the trial judge's granting thereof is an amendment; rather the two comprise the authorization for the eventual amendment of the charging instrument pursuant to Article 28.10." *Ward v. State*, 829 S.W.2d 787, 793 (Tex. Crim.App.1992). An indictment may be amended by interlineation on the face of the original charging instrument, or by incorporating into the trial court's file a separate document with the text of the amended charging language. *See Riney v. State*, 28 S.W.3d 561, 566 (Tex.Crim.App. 2000); *Westmoreland v. State*, 174 S.W.3d 282, 287 (Tex.App.-Tyler 2005, no pet.); *Aguilera v. State*, 75 S.W.3d 60, 64 (Tex. App.-San Antonio 2002, pet. ref'd); *Valenti v. State*, 49 S.W.3d 594, 598 (Tex.App.-Fort Worth 2001, no pet.).

---

5. The State said it did not receive the order either, but it just looked up the order in the courthouse's on-line system.

Here, the State's motion to amend was granted by the trial court's order, "Order Amending Indictment." The order states, in bold capital letters, "SEE ATTACHED." Attached to the order is a "new" indictment, using the precise language from the State's motion to amend, and clearly tracking the language of Section 19.02(b)(1) and (b)(3), charging Barfield with murder and felony murder, respectively. Barfield attempts to distinguish the instant situation from *Valenti*, where the trial court's order contained language from the indictment, which the trial court interlined on the day of trial and thereby amended with language correcting the date of one of Valenti's predicate Driving While Intoxicated convictions and the spelling of Valenti's name. *Valenti*, 49 S.W.3d at 598. Nineteen days before Valenti's trial, the State and defense had agreed to amend the indictment to correct the date of the predicate offense; however, through what appears to have been an oversight, the date never actually was changed on the face of the indictment or on the trial court's order. *Id.* at 596–97. *Valenti* stands for the propositions that (a) interlineation on the trial court's order granting an amendment to the indictment is proper; and (b) under the unique circumstances of that case, where the defendant clearly did not oppose the change in the indictment's language (objecting only to the act of correcting typographical errors on the actual day trial began) and was not surprised by the change in the indictment's language, any error in amending the indictment was harmless. *Id.* at 598–99.

Barfield also cites *Serna v. State*, 69 S.W.3d 377 (Tex.App.-El Paso 2002, no pet.), for his argument that the trial court's amendment was ineffective. *Serna* dealt with a variance in the indictment's language and the proof at trial. The indictment originally charged Serna with stealing a bus ticket from an undercover police officer's pocket; the State moved to amend the language to charge him with theft of a piece of paper. The State also sought to correct a misspelling, replacing "or said property" to "of said property." *Id.* at 378. On December 15, 2000, the *Serna* trial court granted the State's motion to amend, without a hearing; and, after a December 22, 2002, hearing, denied Serna's motion to quash. Serna was tried January 2, 2001, and found guilty. *Id.* In the process of seeking to obtain the clerk's record for appeal, Serna noticed that the State's motion to amend and the trial court's order granting same were never actually filed with the trial court. Therefore, citing *Ward* and *Riney*, the court of appeals found the indictment had not actually been amended. *Id.* at 380.[6]

We find *Valenti* and *Serna* distinguishable from the instant case. In *Valenti*, the defendant had no objection to the amendment and had more than two weeks' actual notice of the State's proffered change in the charging language, which was a change in only the date of a predicate offense. Valenti's only objection was to the actual physical act of amending the face of the indictment on the day of trial; but as he had clearly been put on notice of the State's intended evidence and therefore was not surprised, any error was harmless and that objection was properly overruled. *Valenti*, 49 S.W.3d at 598–99. In *Serna*, the actual amended language never physically made it to the trial court's file; thus, it was impossible for the State's evidence

---

**6.** The court of appeals went on to find that the variance was not material. *See Serna*, 69 S.W.3d at 381–82.

to correspond with the amended language. *Serna*, 69 S.W.3d at 380–82. Here, the file contains (1) the indictment; (2) the State's motion to amend, specifically setting out the proposed amendment; (3) the trial court's order allowing the amendment, which includes an incorporating reference to a new document containing the amended language; and (4) a handwritten note on the original indictment referencing the amendment. The indictment was properly amended.

Barfield next complains that, when he requested ten days to prepare for trial under the amended indictment, the trial court erred in denying him such time. As we have noted, the indictment was amended twelve days before pretrial hearings and thirteen days before voir dire and trial on the merits. While Barfield's counsel acknowledged at the pretrial hearing that he knew the State had moved to amend the indictment, he claimed surprise that the trial court had granted the order.

 Article 28.10 of the Texas Code of Criminal Procedure provides as follows:

After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defen-

dant, to respond to the amended indictment or information.

According to this compulsory language, when Barfield requested ten days to prepare for trial under the amended indictment, he should have been granted such relief. There was error. We therefore examine Barfield's complaint for a showing of harm.[7] *See* TEX.R.APP. P. 44.2(b).

 A "substantial right" is affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight effect," we must consider the error harmless and allow the conviction to stand. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

To determine whether the trial court's error affected a substantial right, the critical inquiry requires consideration of two questions: whether the indictment, as written, informed the defendant of the charge against him or her sufficiently to allow the defendant to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Gollihar v. State*, 46 S.W.3d 243, 248 (Tex.Crim.App.2001) (quoting *United*

---

**7.** For some time, the Texas Court of Criminal Appeals held that, where a statute provided a certain amount of time to prepare for trial (e.g., in the case of newly appointed counsel or to reply to an amended indictment on the day of trial), if the error was properly preserved, no showing of harm on appeal was required. *See Sodipo v. State*, 815 S.W.2d 551 (Tex.Crim.App.1990) (op. on reh'g); *Peters v. State*, 575 S.W.2d 560 (Tex.Crim.App.1979). In 1996, however, the court ruled that cases involving statutes with absolute requirements—specifically Article 26.13 concerning guilty plea admonishments—should be exam-

ined with a "case by case determination of whether in fact a meaningful harm analysis is possible." *See Matchett v. State*, 941 S.W.2d 922, 928 (Tex.Crim.App.1996). The following year, the court stated more forcefully that, "[e]xcept for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis." *See Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

*States v. Sprick,* 233 F.3d 845, 853 (5th Cir.2000)).

Barfield had notice of the State's intended amendment, and he had this notice almost two weeks before trial. Further, the State did not charge him with a new offense. Here, the amended indictment alleged an alternative method of committing the same offense. Further, it did not subject him to double jeopardy for the same act: only one act, the murder of Burns, was charged. Had Barfield been acquitted on the amended indictment, the State could not have tried him again.[8] While under a strict reading of Article 28.10 the trial court erred in not granting Barfield ten days on his request for same, we are confident Barfield suffered no harm from this denial. We overrule these points of error.

### (4) Ineffective Assistance of Counsel Is Not Established by the Record

■ Barfield also complains that he received constitutionally ineffective assistance of counsel.[9] He bases these claims on his assertions of error in the two failures of the jury charge to require unanimity, as addressed above. Since there was no error in the jury charge, counsel did not err in failing to object to the charge. *See Ex parte Thompson,* 179 S.W.3d 549, 559–60 (Tex.Crim.App.2005) (defendant not entitled to jury charge on lesser-included offense; therefore, counsel not ineffective for failing to request); *McFarland v. State,* 845 S.W.2d 824, 846 (Tex.Crim.App.

1992) (not ineffective to fail to object to admissible evidence).[10]

We affirm the judgment of the trial court.

counsel's strategy, and thus, a claim of ineffective assistance is better pursued on habeas review, where there has been some opportunity for the record to have been developed regarding trial counsel's reasons for his or her actions. *See Bone v. State,* 77 S.W.3d 828, 836 (Tex.Crim.App.2002); *Goodspeed v. State,* 187 S.W.3d 390 (Tex.Crim.App.2005).

---

8. See our discussion *supra* of the appropriateness of charging alternative methods of committing a single offense.

9. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim. App.1986).

10. In addition, the trial record on direct appeal is ordinarily inadequate to glean trial