In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00194-CR


______________________________




EARL EUGENE BRYANT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Sixth Judicial District Court


Lamar County, Texas


Trial Court No. 21457




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 After the evidentiary portion of the guilt/innocence phase of Earl Eugene Bryant's jury trial
on two counts of aggravated sexual assault of a child under fourteen years of age, (1) the trial court
charged the jury that it should find Bryant guilty on count one if it found beyond a reasonable doubt
that Bryant caused his mouth to contact or penetrate the sexual organ of the female child victim. 
Similarly, the trial court charged the jury that it should find Bryant guilty on count two if it found
beyond a reasonable doubt that Bryant caused his sexual organ to contact or penetrate the sexual
organ of the victim. The jury convicted Bryant, and assessed punishment at ninety-nine years'
imprisonment and a $10,000.00 fine, on each count. (2)

 On appeal, Bryant raises three points of error: paragraph one of count one of the indictment
was not properly amended, the evidence is legally and factually insufficient to support a conviction
on count one of the indictment, and the court erred by refusing to admit an examining nurse's report
which included evidence of prior sexual abuse of the victim by a different person. We affirm,
holding (1) the indictment was properly amended, (2) legally and factually sufficient evidence
supports the count-one conviction, and (3) excluding the report was not error on the basis preserved
at trial.

 The indictment contained two counts against Bryant, each of which contained two
paragraphs; and each of the four paragraphs alleged that Bryant did something to the sexual organ
of the victim. In count one, paragraph one alleged oral penetration of the victim, while paragraph
two alleged oral contact. In count two, paragraph one alleged penile penetration of the victim, while
paragraph two alleged penile contact.

(1) The Indictment Was Properly Amended

 Of the four paragraphs of the indictment, all but count one, paragraph two, alleged that the
victim was a child under fourteen years of age. Count one, paragraph two, simply stopped, truncated
before it reached that allegation. That paragraph was the subject of the State's motion to amend, to
make all four paragraphs allege aggravated sexual assault.

 Bryant complains that the errant paragraph was never amended. Before trial, the State asked
the trial court to amend the errant paragraph of the indictment. Although the trial court granted the
motion, the face of the indictment originally provided in the appellate record contains nothing
indicating the amendment. An indictment is effectively amended when a physical change is actually
made to the charging instrument. (3) Ward, 829 S.W.2d 787. A supplemental clerk's record has now
been filed which contains an amended indictment, filed on the date of the trial, showing the physical
amendment of the indictment.

 Error has not been shown. We overrule this point of error.

(2) Legally and Factually Sufficient Evidence Supports the Count-One Conviction

 Bryant next contends the evidence is legally and factually insufficient to support a conviction
for aggravated sexual assault of a child based on count one, paragraph two of the indictment. As
mentioned above, that portion of the indictment alleges Bryant committed the offense using his
mouth to penetrate the victim:

 [Bryant,] on or about the 8th day of September, 2004[,] did then and there
intentionally or knowingly cause the penetration of the female sexual organ of
[R. H.], a child younger than 14 years of age who was not the spouse of said
Defendant by the Defendant's mouth. (4)


 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).

 In a factual sufficiency review, we also view all the evidence, but do so in a neutral light and
determine whether the evidence supporting the verdict is so weak that the jury's verdict is clearly
wrong or manifestly unjust or against the great weight and preponderance of the evidence. Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15
(Tex. Crim. App. 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In a factual
sufficiency review, we are to afford "due deference" to a jury's determinations. Marshall, 210
S.W.3d at 625.

 Counsel states categorically that there is absolutely no evidence that Bryant penetrated the
victim's sexual organ with his mouth. The State's response does not direct us to evidence of
penetration, but instead points out that the charge allowed conviction if it found that Bryant caused
his mouth "to contact or penetrate the sexual organ of R. H." R. H. testified that Bryant's mouth and
tongue contacted her private parts.

 The charge combined paragraphs one and two, under count one, into two alternative means
of Bryant's committing the aggravated sexual assault using his mouth. (5) As charged, the jury was
authorized to convict, under count one, on either means. Generally, when a jury returns a general
verdict and evidence is sufficient to support a finding of guilt under any paragraph allegation
submitted, the verdict will be upheld. Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim. App.
2003); Rabbani v. State, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992).

 The victim testified that Bryant took off her panties and kissed her on her private area or
parts, which she agreed was where she "tee-tees." The victim further testified that Bryant put her
on her stomach on the bed and licked her "where he wasn't supposed to" after he had removed her
panties. The evidence is legally and factually sufficient to support the verdict based on oral to genital
contact. We overrule this contention of error.

(3) Excluding the Report Was Not Error on the Basis Preserved at Trial

 Bryant finally contends the trial court erred by refusing his request to introduce a document
into evidence. The document in question is a report prepared by Kimberly Light, a sexual assault
nurse examiner who had examined the victim. The document contained information that the victim
complained of having been sexually assaulted, not only by Bryant, her stepfather, but also, at an
earlier time, by her natural father.

 On direct examination by the State, Light orally recounted selected portions of her report,
leaving out any reference to the victim's natural father: (6)

 When we asked her why she was here today she said, well, my step daddy, he raped
me while I was in Paris. . . . We asked her when you say rape, what do you mean. 
She said he tried to put his dingy in my private spot. Your front private spot or your
back private spot. Front. Did he get it all the way in. She said no. We asked her did
it hurt and she said yes. We asked did he do it a lot and she told us yes. Did he do
it in the front and she said yes. And we asked her what her step daddy's name was
and she told us Gene Bryant.

 Bryant then contended to the trial court that other information from the report should also
have been admitted. Quoting the transcribed dialogue at this point in the trial presents Bryant's issue
in context:


 The Court: The record should reflect that the jury's out of the courtroom. 
Please be seated.

 

 We just had held a bench conference at which the defense attorney
complained that the witness had not testified to the contents of the entire document,
specifically that there were references to prior events. The court ruled that those
events are not admissible under any condition, that this is not a matter of trying to
admit the entire document because the statute itself makes it inadmissible. (7) I offered
then to defense counsel, and I'll reoffer, if you have got any other reason that you
know that that statute should not be applied, I would be glad to hear it. I also at that
time acknowledged that the copy of the entire document will be admitted into
evidence for appellate purposes only. Is that it?

 

 (Defendant's Exhibit 1 received.)

 

 Defense Counsel: Your Honor, that's our understanding. I expressed my
concern that she gave a detailed narrative of the document and failed to talk about the
other parts that were in the document.

 

 The Court: Well --

 

 Defense Counsel: Prior history. And that we would go ahead and have
it admitted for the appellate record.

 

 The Court: Obviously the prosecutors had her properly prepared and she
probably knew better than to go into it anyway, and it was not opened up in any way
by the prosecution. I don't know of any other way that it would become admissible
other than accidentally. If you have got anything else to offer, I will be glad to hear
it.

 

 Defense Counsel: No, Your Honor, having it available for the appellate
record will be sufficient.


Bryant contends that, under the rule of optional completeness, the trial court should have allowed
the entire report into evidence, or at least the information from the report about the victim earlier
being sexually assaulted by her natural father. Bryant's argument at trial appears to have been--and
on appeal appears to be--simply that, because Light used the report to testify about some of the
victim's history of sexual victimization, the rule of optional completeness requires the report's other
history of the victim's sexual victimization to be allowed into evidence as well. Certainly, the trial
court opined that Light's direct testimony, quoted above, did not trigger Bryant's suggested use of
the rule of optional completeness--"it was not opened up in any way by the prosecution." We
address that complaint, that is, the one raised at trial and argued on appeal. (8)

 The standard of review for a trial court's ruling under the Texas Rules of Evidence is abuse
of discretion. Angleton v. State, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998). 

 Under the rule of optional completeness, when only a portion of an act, declaration,
conversation, writing, or recorded statement is introduced, the adverse party is entitled to introduce
into evidence the "whole on the same subject" or any related act, declaration, writing, or recorded
statement necessary to a full understanding of the evidence, or to explain that evidence. Tex. R.
Evid. 107. Rule 107 is one of admissibility and permits the introduction of otherwise inadmissible
evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the
adverse party. Walters v. State, 206 S.W.3d 780, 786 (Tex. App.--Texarkana 2006, no pet.); (9) see
Johnson v. State, 747 S.W.2d 451, 453-54 (Tex. App.--Houston [14th Dist.] 1988, pet. ref'd). The
rule takes effect when other evidence has already been introduced but is incomplete and misleading. 
Jones v. State, 963 S.W.2d 177, 182 (Tex. App.--Fort Worth 1998, pet. ref'd). "Once an evidentiary
door has been opened by one side, this rule serves to allow the other side to complete the picture." 
West v. State, 121 S.W.3d 95, 103 (Tex. App.--Fort Worth 2003, pet. ref'd). (10)

 In this case, the challenged aspect of the evidence that was admitted did not suggest that only
one person had ever assaulted the victim. The unadmitted statements to which counsel directs our
attention are not directly related to the assault case before this Court, and there is nothing about this
assault that the statements would illuminate.

 We cannot say, under this state of the evidence, that the trial court abused its discretion by
overruling the motion to present the remainder of the report to the jury for its consideration. We
overrule this contention of error.

 We affirm the judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 4, 2007

Date Decided: April 20, 2007


Do Not Publish
1. See Tex. Penal Code Ann. § 22.021(a)(1)(B), (2)(B) (Vernon Supp. 2006).
2. The trial court sentenced Bryant accordingly and provided that his sentences would run
concurrently.
3. The means of amending an indictment is set out by statute. See Tex. Code Crim. Proc.
Ann. art. 28.10 (Vernon 2006). "Neither the [State's] motion [to amend an indictment] nor the trial
judge's granting thereof is an amendment; rather the two comprise the authorization for the eventual
amendment of the charging instrument pursuant to Article 28.10." Ward v. State, 829 S.W.2d 787,
793 (Tex. Crim. App. 1992). An indictment may be amended by interlineation on the face of the
original charging instrument, or by incorporating into the trial court's file a separate document with
the text of the amended charging language. See Riney v. State, 28 S.W.3d 561, 566 (Tex. Crim. App.
2000); Barfield v. State, 202 S.W.3d 912, 919 (Tex. App.--Texarkana 2006, pet. ref'd).
4. This is not the portion of the indictment that was amended.
5. Paragraph one alleged oral to genital contact, while paragraph two alleged oral penetration
of the victim's sexual organ.
6. Bryant's hearsay objection to that testimony was overruled, a ruling not challenged on
appeal.
7. The trial court appears to have been referring to Rule 412 of the Texas Rules of Evidence,
which excludes "evidence of specific instances of an alleged victim's past sexual behavior" except
in specific instances. See Tex. R. Evid. 412(b).
8. Remarkably, a different--though unraised--potential trigger for the rule of optional
completeness may have been overlooked. Comparing Light's written report with her trial testimony,
we note that Light's testimony, when it recounted the victim's answers that Bryant "did it a lot" and
that he "did it in the front," may have been misleading in that the written report suggests contextually
that those two allegations may have been directed at the victim's natural father, not Bryant. The
report actually reads as follows:


 "Well, um, my stepdaddy, he raped me while I was in Paris. . . ." When you say
rape, what do you mean? "He tried to put his dingy in my private spot." Your front
private spot or back private spot? "Front." Did he get it all the way in? "No." Did
it hurt? "Yes." Is there anything else you want to tell us? "My real daddy did it
too." When? "In 2000 and all my life. He killed himself in 2000." Did he do it a
lot? "Yes." Did he do it in the front? "Yes." What is your stepdaddy's name? "Gene
Bryant." What is your daddy's name? "Dale . . ."


(Emphasis added.) At a minimum, the identity of the person who did "it a lot" and who did "it in
the front" is unclear from the report's context. Light's testimony certainly attributes those acts to
Bryant. In that regard, Light's testimony may have "opened" the issue of who did "it a lot" and who
did "it in the front" and may have provided an opportunity, had it been noticed, to get clarifying
testimony admitted under the rule of optional completeness. Because, at trial, that issue was not
preserved for appeal, we do not decide that issue here.
9. This Court has recently addressed variations on the theme of optional completeness in
several opinions, including Walters; Ziolkowski v. State, No. 06-06-00030-CR, 2007 WL 967029
(Tex. App.--Texarkana Apr. 3, 2007, no pet.); Sneed v. State, 209 S.W.3d 782, 792 (Tex.
App.--Texarkana 2006, no pet.).
10. In a footnote, the court announced that cases which broadly stated "that the whole
conversation may be shown is not supported by the language of the statute and should not be relied
upon in the future." Sauceda v. State, 129 S.W.3d 116, 123 n.5 (Tex. Crim. App. 2004) (citing Tex.
R. Evid. 107); Sneed, 209 S.W.3d at 792.




:none;
 font-size:12.0pt;
 font-family:Shruti;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:"Times New Roman";}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:Shruti;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:"Times New Roman";}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:Shruti;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:"Times New Roman";}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:Shruti;
 mso-ascii-font-family:Shruti;
 mso-hansi-font-family:Shruti;
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:Shruti;
 mso-ascii-font-family:Shruti;
 mso-hansi-font-family:Shruti;
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-11-093-CR%20In%20re%20Bledsoe%20FINAL%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-11-093-CR%20In%20re%20Bledsoe%20FINAL%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-11-093-CR%20In%20re%20Bledsoe%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-11-093-CR%20In%20re%20Bledsoe%20FINAL%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-footer:url("6-11-093-CR%20In%20re%20Bledsoe%20FINAL%20mtd_files/header.htm") f2;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-11-00093-CR

                                                ______________________________

 

 

 

                                                   IN
RE:  JAMIE LEE BLEDSOE

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                            Memorandum
Opinion by Justice Moseley

                                                                              

                                                                              








                                                     MEMORANDUM 
OPINION

 

            Jamie Lee Bledsoe has filed with
this Court a Motion in Advice, which we interpret as a petition for mandamus
relief.  Bledsoe asks this Court to order
the 71st Judicial District Court of Harrison County, Texas, to acknowledge the
filing of Bledsoes motion for judgment nunc pro tunc and to provide Bledsoe
with a file-marked copy of this motion.  

            The proceedings giving rise to this
petition begin with Bledsoes filing a petition for writ of mandamus, asking
this Court to order the trial court to grant his previously filed motion for
judgment nunc pro tunc, in order to correctly credit Bledsoe with actual time
served for which no credit was given. 
This Courts opinion issued on April 8, 2011, denying Bledsoes petition
for the reason that Bledsoe failed to furnish a record sufficient to support
his claim for mandamus relief.  See Tex.
R. App. P. 52.7(a).  Specifically,
Bledsoe failed to furnish this Court with evidence that the motion for judgment
nunc pro tunc was filed in the trial court, together with documentation
verifying the dates and events (short of a copy of an indictment for burglary
of a habitation) alleged to be the basis of Bledsoes time credit claim.

            Bledsoe filed a second motion for
judgment nunc pro tunc on May 2, 2011. 
This Court has been furnished with a file-marked copy of that motion by
the clerk of the trial court.  Bledsoes
request for a file-marked copy of his motion for judgment nunc pro tunc was
made in order that he would then be in a position to ultimately provide this
Court with a file-marked copy of that motion. 
Because that purpose has been accomplished, Bledsoe has received the
relief requested in his petition.[1]

            Accordingly, we dismiss Bledsoes
petition for writ of mandamus as moot.

            

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          May 17, 2011

Date
Decided:             May 18, 2011

 

Do
Not Publish











[1]Because
it has become apparent that there will be no ruling on Bledsoes motion for
judgment nunc pro tunc in the absence of a submitted order, Bledsoe would be
well served to submit an order to the clerk of the trial court and to the trial
court, seeking a ruling on his motion for judgment nunc pro tunc, together with
a specific request to the trial court seeking a ruling on the motion.  We do not condone the practice of refusing to
rule on petitioners motion in the absence of a submitted order, especially in
view of the fact that Bledsoe is incarcerated.