In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00095-CR


______________________________




ARNOLD BARFIELD, III, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 03F0667-202




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Arnold Barfield, III, and Rickey Burns had been friends. But, in May 2003, their evening of
partying turned deadly when Barfield fatally shot Burns.

 Evidence showed that Barfield, Burns, and their dates first went to a Texarkana liquor store
and then to a bar. At the bar, Barfield was reportedly loud and rowdy in responding to other guests'
karaoke performances. Later, the four arrived at a friend's house, and Burns and Barfield had some
sort of argument. No witness reported seeing Burns hit or push Barfield, but somehow Barfield
ended up on the ground. In response, Barfield walked to his own truck, where he retrieved a gun. 
Gala Cooper, who was in Barfield's truck at the time, said that, when Barfield came to the truck,
Barfield said, "I don't have to put up with this [expletive]. I don't have to deal with this [expletive]." 
Cooper unsuccessfully struggled with Barfield over the gun. With control of the gun, Barfield turned
toward Burns, who was standing with Tonda Barton, and shot him. When Barton screamed that
Barfield had shot Burns, Barfield said, "I didn't hit anybody." 

 Barfield was ultimately charged with, and tried for, murder--causing the death of Burns by
the alternative means of (A) "shooting him with a firearm," or (B) "knowingly commit[ting] or
attempt[ing] to commit an act clearly dangerous to human life, discharging a firearm at or in the
direction of" Burns. A Bowie County jury returned a guilty verdict and recommended a sentence
of forty years, a sentence imposed by the trial court.

 We affirm the trial court's judgment because we find the following on Barfield's challenges
to that judgment: (1) the jury charge properly allowed the jury to convict based on alternate means
of committing murder; (2) the jury charge sufficiently required unanimity on the sudden passion
issue; (3) any error in amending the indictment was harmless; and (4) ineffective assistance of
counsel is not established by the record.

(1) The Jury Charge Properly Allowed the Jury to Convict Based on Alternate Means of
Committing Murder

 Barfield complains of the trial court's charge to the jury, which allowed the jury to convict
him of murder if it found either (A) he killed Burns intentionally or knowingly by shooting Burns
with a firearm; or, alternatively, (B) he committed or attempted to commit an act clearly dangerous
to human life--firing a firearm in the direction of, or at, Burns--and Burns died as a result. (1) 
Barfield contends the trial court erred because this charge allowed the jury to convict Barfield
without coming to a unanimous decision on whether he committed murder. We reject these
arguments because, in short, the charge properly presented the jury with two alternative ways of
committing one offense, murder.

 Barfield's complaint boils down to his assertion that the trial court's charge to the jury on
guilt/innocence allowed a conviction on a choice of two crimes, murder or felony murder, without
requiring a unanimous finding on either. The two acts the State ultimately charged Barfield with
doing are described in subsections (b)(1) and (b)(3) of Section 19.02 of the Texas Penal Code:

 (b) A person commits an offense [murder] if he:

 (1) intentionally or knowingly causes the death of an individual;

 

 (2) intends to cause serious bodily injury and commits an act clearly
dangerous to human life that causes the death of an individual; or

 

 (3) commits or attempts to commit a felony, other than manslaughter,
and in the course of and in furtherance of the commission or attempt,
or in immediate flight from the commission or attempt, he commits
or attempts to commit an act clearly dangerous to human life that
causes the death of an individual.


Tex. Pen. Code Ann. § 19.02 (Vernon 2003).

 It has long been established that, 

 if but one transaction is involved, and the offense be one which may have been
committed in any one of several ways, the pleader may charge in the indictment, in
one count that such offense had been committed by doing this, and that, and the
other, and there will be no duplicity, and need be but a verdict of guilty . . . .


Aguirre v. State, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (op. on reh'g) (quoting McArthur v.
State, 132 Tex. Crim. 447, 105 S.W.2d 227, 230 (1937) (op. on reh'g)). In Aguirre, the appellant
was refused entrance to the house by his ex-wife, and he responded by firing a shotgun through the
door, killing their daughter. Aguirre was charged with murder in two alternative paragraphs, the first
invoking Section 19.02(a)(1)--alleging that he intentionally or knowingly caused the girl's
death--and the second invoking Section 19.02(a)(3)--alleging that he caused her death in the course
of committing criminal mischief, i.e., shooting through the door. Aguirre's conviction for felony
murder  was  affirmed.  "Because  appellant's  indictment  did  not  allege  different  offenses  but
only . . . different ways of committing the same offense, the court properly furnished the jury with
a general verdict form." Aguirre, 732 S.W.2d at 326. Aguirre is directly applicable to the case
before us.

 Earlier this year, the Texas Court of Criminal Appeals was faced with a unanimity challenge
and ruled that, where the charge was injury to a child, under Section 22.04 of the Texas Penal
Code--but the defendant was accused alternatively of (1) striking the child, (2) failing to prevent
another from injuring the child, and (3) failing to provide proper medical care for the child--the
alternative allegations were just different ways to commit the single offense. See Jefferson v. State,
189 S.W.3d 305 (Tex. Crim. App. 2006); see also Tex. Pen. Code Ann. § 22.04 (Vernon Supp.
2006). The Jefferson court quoted approvingly an opinion of the Wisconsin Supreme Court, State
v. Johnson, 627 N.W.2d 455, 459-60 (Wis. 2001), in using a two-part analysis for such a unanimity
challenge: (1) examine the statute to determine whether the Legislature intended to define separate
offenses or merely alternative ways to commit one offense, and (2) if the offending behavior merely
constitutes alternative ways to commit one offense, consider whether that formulation denies the
defendant the due process of law as stated by Schad v. Arizona, 501 U.S. 624 (1991). See Jefferson,
189 S.W.3d at 311-14. In a concurring opinion, Judge Cochran provided a grammar lesson on
sentence structure, and then encapsulated the rule:

 At a minimum, [the elements the jury must find, unanimously, beyond a reasonable
doubt] are: the subject (the defendant); the main verb; and the direct object if the
main verb requires a direct object (i.e., the offense is a result-oriented crime); and the
specific occasion (the date phrase within the indictment, but narrowed down to one
specific incident regardless of the date alleged). Generally, adverbial phrases,
introduced by the preposition "by," describe the manner and means of committing the
offense. They are not the gravamen of the offense nor elements on which the jury
must be unanimous.

Jefferson, 189 S.W.3d at 316 (Cochran, J., concurring). We are constrained by Aguirre and
Jefferson.

 Barfield urges us to reverse based on Francis v. State, 36 S.W.3d 121 (Tex. Crim. App.
2000), and Ngo v. State, 175 S.W.3d 738 (Tex. Crim. App. 2005). In Francis, the State presented
evidence of four incidents of indecency with a child by Francis: two incidents involved touching the
victim's breast; two involved touching the victim's genitals. The charge instructed the jury that
Francis could be found guilty if he were found to have "engage[d] in sexual contact by touching the
breast or genitals of [the victim]." Francis, 36 S.W.3d at 124. Citing Vernon v. State, 841 S.W.2d
407 (Tex. Crim. App. 1992), the Francis court held the two incidents of sexual contact were distinct
criminal acts and not properly charged in a single disjunctive application paragraph. Francis, 36
S.W.3d at 124.

 In Ngo, the Texas Court of Criminal Appeals held that the jury had to return a unanimous
verdict on  whether  Ngo  committed  one  of  the  charged  offenses: (1)  stealing  Ms.  Truong's
credit card; (2) receiving her credit card, knowing that it was stolen and intending to use it
fraudulently; or (3) fraudulently presenting her credit card with the intent to obtain a benefit. 
Because each of those acts constituted an independent criminal offense, merely allowing the jury to
return a general verdict on whether Ngo committed one of these acts was error. Ngo, 175 S.W.3d
at 744-45.

 Barfield also cites Clear v. State, 76 S.W.3d 622 (Tex. App.--Corpus Christi 2002, no pet.). 
As in Francis, Clear involved allegations of several distinct criminal acts: penetration of the victim's
sexual organ with Clear's finger, sexual organ, and more. Also, as in Francis, the charged acts are
separate criminal acts, not appropriately charged in the disjunctive. Francis, Ngo, and Clear are
inapposite to this discussion because Barfield's charge involved alternative means of committing a
single offense. (2)

 Barfield also complains that we cannot use Kitchens v. State, 823 S.W.2d 256 (Tex. Crim.
App. 1991), to affirm the trial court. Here is what we said recently about a similar point of error:

 [In Kitchens], the Texas Court of Criminal Appeals held that, "It is appropriate where
the alternate theories of committing the same offense are submitted to the jury in the
disjunctive for the jury to return a general verdict if the evidence is sufficient to
support a finding under any of the theories submitted." [Kitchens, 823 S.W.2d] at
258, citing Aguirre v. State, 732 S.W.2d 320, 326 (Tex. Crim. App. [Panel Op.]
1987) (op. on reh'g).


Bethany v. State, 152 S.W.3d 660, 667 (Tex. App.--Texarkana 2004, pet. ref'd).

 There was no error in the trial court's charge to the jury. The charge appropriately submitted
alternative ways of violating the applicable statute. The jury's verdict represents the necessary
unanimous finding that Barfield murdered Burns under Section 19.02 of the Texas Penal Code.

(2) The Jury Charge Sufficiently Required Unanimity on the Sudden Passion Issue


 Barfield also claims the trial court erred in not requiring the jury to come to a unanimous
decision on the issue of sudden passion when deliberating on Barfield's punishment. If the jury had
found Barfield acted under the influence of sudden passion when he killed Burns, the crime would
have been punished as a second-degree felony. See Tex. Pen. Code Ann. § 19.02(d). The charge
included an instruction on sudden passion and a definition of that term. Only at the end of the charge
did the word "unanimous" appear: "Your verdict must be by a unanimous vote of all members of
the jury." Barfield concedes he did not object to the punishment charge and must establish egregious
harm to obtain reversal. (3)

 A jury's finding on sudden passion must be unanimous. Sanchez v. State, 23 S.W.3d 30, 33
(Tex. Crim. App. 2000). The Sanchez trial court instructed the jury to find, unanimously, for
Sanchez on the issue of sudden passion and, otherwise, to find against Sanchez on that issue. (4)
 The
jury assessed a sentence of twenty-five years, more than the range for a second-degree felony, which
would have been the range with a finding in Sanchez' favor on sudden passion. The trial court polled
the jury and found that three jurors wanted to find in Sanchez' favor on the issue of sudden passion. 
But because of the trial court's instructions, the jurors had to find against Sanchez on the issue. 
Sanchez, 23 S.W.3d at 32. The Texas Court of Criminal Appeals held that Article 37.07 of the
Texas Code of Criminal Procedure "requires unanimity with respect to the jury's preliminary vote
on sudden passion." Id. at 34.

 A similar result was obtained in Newton v. State, 168 S.W.3d 255, 257-58 (Tex.
App.--Austin 2005, pet. ref'd). The Newton trial court had instructed the jurors to assess a prison
term of five years to life unless they agreed that the appellant acted under the immediate influence
of sudden passion arising from an adequate cause. This instruction did not condition the jurors' use
of the five-to-life punishment range on a unanimous finding that the appellant did not act under the
influence of sudden passion; instead, the harsher punishment range was made applicable in the
absence of a finding in appellant's favor. Id. In reversing the trial court result, the Third Court of
Appeals followed Sanchez. "If the jurors fail to agree on the sudden passion issue, the result is a
mistrial." Id. at 256 (citing Sanchez, 23 S.W.3d at 33).

 An important distinction exists in this case. While it is true the trial court's charge to the jury
at punishment only generally required unanimity by stating, in the last paragraph, "Your verdict must
be by a unanimous vote of all members of the jury," the first verdict form in the charge asked, "Do
you, the jury, find by a preponderance of the evidence that on the occasion in question, at the time
of the commission of offense for which the defendant is on trial, the defendant, Arnold Barfield, III,
caused the death of Rickey Burns, while he, Arnold Barfield, III, was under the immediate influence
of sudden passion arising from an adequate cause?" The jury answered, "no." Earlier this summer,
the Tyler Court of Appeals encountered a similar situation. As in Barfield's trial, the jury had been
asked if it found the defendant had acted under the immediate influence of sudden passion, and a
general instruction required the verdict to be unanimous. See Latham v. State, No. 12-05-00146-CR,
2006 WL 2065334, at *8 (Tex. App.--Tyler July 26, 2006, no pet. h.) (mem. op.) (not designated
for publication). The Tyler court found this question and the separate, general instruction sufficient
to ensure the jury was unanimous in its finding on the issue of sudden passion. See id. Likewise,
in Cartier v. State, 58 S.W.3d 756 (Tex. App.--Amarillo 2001, pet. ref'd), the jury charge used the
term "unanimous" only in the final paragraph; but a separate, special issue question asked the jury
its finding on the issue of sudden passion, and the jury answered in the negative. Id. at 759-60. 
Here, the jury was submitted a special issue, asking only whether it found Barfield acted under the
immediate influence of sudden passion. That term was defined in accordance with the Texas Penal
Code. See Tex. Pen. Code Ann. § 19.02(a)(2), (d). 

 Because the trial court's charge appropriately guaranteed a unanimous finding on the sudden
passion issue, no error is shown.

(3) Any Error in Amending the Indictment Was Harmless

 Barfield also complains that the trial court erred in amending the indictment, then in not
giving Barfield his requested ten days to prepare for trial after the amendment. Our analysis of
Barfield's complaints must begin with a careful reading of the applicable statute. Article 28.10 of
the Texas Code of Criminal Procedure provides as follows:

 (a) After notice to the defendant, a matter of form or substance in an indictment or
information may be amended at any time before the date the trial on the merits
commences. On the request of the defendant, the court shall allow the defendant not
less than 10 days, or a shorter period if requested by the defendant, to respond to the
amended indictment or information.

 (b) A matter of form or substance in an indictment or information may also be
amended after the trial on the merits commences if the defendant does not object.

 

 (c) An indictment or information may not be amended over the defendant's objection
as to form or substance if the amended indictment or information charges the
defendant with an additional or different offense or if the substantial rights of the
defendant are prejudiced.


Because we find that the way the trial court amended the indictment, even if error, was harmless, we
will overrule this assertion of error.

 Barfield was indicted by a Bowie County grand jury September 18, 2003. The original
indictment charged Barfield with murder:

 On or about May 16, 2003, [Barfield] did unlawfully then and there, intentionally or
knowingly, cause the death of an individual, Rickey Burns, by shooting him with a
firearm; 


 PARAGRAPH TWO: . . . . did then and there intentionally, with the intent to cause
serious bodily injury to Rickey Burns, commit an act clearly dangerous to human life,
namely, shooting him with a firearm, which caused the death of Rickey Burns.


This language tracks Section 19.02(b)(1) and (2), charging Barfield with "regular" murder (Section
19.02(b)(1)) and "serious bodily injury murder" (Section 19.02(b)(2)). On March 16, 2005, the State
filed a motion to amend the indictment, with an attached proposed amended indictment, which
abandoned the "serious bodily injury murder" charge and charged Barfield with "felony murder"
under Section 19.02(b)(3). See Tex. Pen. Code Ann. § 19.02(b)(3). The proposed new paragraph
of the amended indictment alleged:

 And it is further presented in and to said Court that in the County of Bowie and State
of Texas, on or about May 16, 2003 . . . Barfield . . . did, unlawfully then and there
intentionally or knowingly commit or attempt to commit an act clearly dangerous to
human life, namely, discharging a firearm at or in the direction of Rickey Burns, that
caused the death of Rickey Burns, and the said defendant was then and there in the
course of and in furtherance of the commission or attempted commission of a felony
offense, to-wit: deadly conduct.

The certificate of service on the State's motion to amend represents the motion was sent to Barfield
March 15.

 On March 16, 2005, the trial court signed an order amending the indictment, using the new
language as proposed by the State. 

 On March 28, 2005, at a pretrial hearing the day before voir dire and trial began, Barfield's
counsel stated he did not receive a copy of the trial court's order amending the indictment. (5) The
certificate of service on the State's motion to amend indicates the prosecution sent the motion to
amend and proposed amended indictment to Barfield's attorneys March 15, 2005. The attorney for
the State produced the facsimile transmission confirmation report, listing two fax numbers, and
stated that the facsimile transmission of the motion "went through" March 15. The trial court,
apparently reading from the court's file, noted that the State's motion was filed with the clerk at 10:36
a.m., March 16, and that the trial court signed the order an hour later. The trial court also noted that,
when the State's motion arrived on the trial court's desk March 16, the court "counted the days" in
order to give Barfield ten days' notice and avoid any need for a continuance. On March 29, counsel
for Barfield did say, as they continued pretrial hearings just before voir dire, that, on March 15, he
had received the State's motion to amend with its proposed order. 

 Barfield's complaints about the indictment raise two issues. In the first, he asserts the
indictment was never properly amended. We disagree.

 The Texas Court of Criminal Appeals has held that "[n]either the [State's] motion [to amend]
nor the trial judge's granting thereof is an amendment; rather the two comprise the authorization for
the eventual amendment of the charging instrument pursuant to Article 28.10." Ward v. State, 829
S.W.2d 787, 793 (Tex. Crim. App. 1992). An indictment may be amended by interlineation on the
face of the original charging instrument, or by incorporating into the trial court's file a separate
document with the text of the amended charging language. See Riney v. State, 28 S.W.3d 561, 566
(Tex. Crim. App. 2000); Westmoreland v. State, 174 S.W.3d 282, 287 (Tex. App.--Tyler 2005, no
pet.); Aguilera v. State, 75 S.W.3d 60, 64 (Tex. App.--San Antonio 2002, pet. ref'd); Valenti v.
State, 49 S.W.3d 594, 598 (Tex. App.--Fort Worth 2001, no pet.).

 Here, the State's motion to amend was granted by the trial court's order, "Order Amending
Indictment." The order states, in bold capital letters, "SEE ATTACHED." Attached to the order
is a "new" indictment, using the precise language from the State's motion to amend, and clearly
tracking the language of Section 19.02(b)(1) and (b)(3), charging Barfield with murder and felony
murder, respectively. Barfield attempts to distinguish the instant situation from Valenti, where the
trial court's order contained language from the indictment, which the trial court interlined on the day
of trial and thereby amended with language correcting the date of one of Valenti's predicate Driving
While Intoxicated convictions and the spelling of Valenti's name. Valenti, 49 S.W.3d at 598. 
Nineteen days before Valenti's trial, the State and defense had agreed to amend the indictment to
correct the date of the predicate offense; however, through what appears to have been an oversight,
the date never actually was changed on the face of the indictment or on the trial court's order. Id. at
596-97. Valenti stands for the propositions that (a) interlineation on the trial court's order granting
an amendment to the indictment is proper; and (b) under the unique circumstances of that case,
where the defendant clearly did not oppose the change in the indictment's language (objecting only
to the act of correcting typographical errors on the actual day trial began) and was not surprised by
the change in the indictment's language, any error in amending the indictment was harmless. Id. at
598-99.

 Barfield also cites Serna v. State, 69 S.W.3d 377 (Tex. App.--El Paso 2002, no pet.), for his
argument that the trial court's amendment was ineffective. Serna dealt with a variance in the
indictment's language and the proof at trial. The indictment originally charged Serna with stealing
a bus ticket from an undercover police officer's pocket; the State moved to amend the language to
charge him with theft of a piece of paper. The State also sought to correct a misspelling, replacing
"or said property" to "of said property." Id. at 378. On December 15, 2000, the Serna trial court
granted the State's motion to amend, without a hearing; and, after a December 22, 2002, hearing,
denied Serna's motion to quash. Serna was tried January 2, 2001, and found guilty. Id. In the
process of seeking to obtain the clerk's record for appeal, Serna noticed that the State's motion to
amend and the trial court's order granting same were never actually filed with the trial court. 
Therefore, citing Ward and Riney, the court of appeals found the indictment had not actually been
amended. Id. at 380. (6)

 We find Valenti and Serna distinguishable from the instant case. In Valenti, the defendant
had no objection to the amendment and had more than two weeks' actual notice of the State's
proffered change in the charging language, which was a change in only the date of a predicate
offense. Valenti's only objection was to the actual physical act of amending the face of the
indictment on the day of trial; but as he had clearly been put on notice of the State's intended
evidence and therefore was not surprised, any error was harmless and that objection was properly
overruled. Valenti, 49 S.W.3d at 598-99. In Serna, the actual amended language never physically
made it to the trial court's file; thus, it was impossible for the State's evidence to correspond with the
amended language. Serna, 69 S.W.3d at 380-82. Here, the file contains (1) the indictment; (2) the
State's motion to amend, specifically setting out the proposed amendment; (3) the trial court's order
allowing the amendment, which includes an incorporating reference to a new document containing
the amended language; and (4) a handwritten note on the original indictment referencing the
amendment. The indictment was properly amended.

 Barfield next complains that, when he requested ten days to prepare for trial under the
amended indictment, the trial court erred in denying him such time. As we have noted, the
indictment was amended twelve days before pretrial hearings and thirteen days before voir dire and
trial on the merits. While Barfield's counsel acknowledged at the pretrial hearing that he knew the
State had moved to amend the indictment, he claimed surprise that the trial court had granted the
order.

 Article 28.01 of the Texas Code of Criminal Procedure provides as follows:

 After notice to the defendant, a matter of form or substance in an indictment or
information may be amended at any time before the date the trial on the merits
commences. On the request of the defendant, the court shall allow the defendant not
less than 10 days, or a shorter period if requested by the defendant, to respond to the
amended indictment or information.

According to this compulsory language, when Barfield requested ten days to prepare for trial under
the amended indictment, he should have been granted such relief. There was error. We therefore
examine Barfield's complaint for a showing of harm. (7) See Tex. R. App. P. 44.2(b).

 A "substantial right" is affected "when the error had a substantial and injurious effect or
influence in determining the jury's verdict." King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App.
1997). If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight
effect," we must consider the error harmless and allow the conviction to stand. Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998).

 To determine whether the trial court's error affected a substantial right, the critical inquiry
requires consideration of two questions: whether the indictment, as written, informed the defendant
of the charge against him or her sufficiently to allow the defendant to prepare an adequate defense
at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant
to the risk of being prosecuted later for the same crime. Gollihar v. State, 46 S.W.3d 243, 248 (Tex.
Crim. App. 2001) (quoting United States v. Sprick, 233 F.3d 845, 853 (5th Cir. 2000)).

 Barfield had notice of the State's intended amendment, and he had this notice almost two
weeks before trial. Further, the State did not charge him with a new offense. Here, the amended
indictment alleged an alternative method of committing the same offense. Further, it did not subject
him to double jeopardy for the same act: only one act, the murder of Burns, was charged. Had
Barfield been acquitted on the amended indictment, the State could not have tried him again. (8) 
While under a strict reading of Article 28.10 the trial court erred in not granting Barfield ten days
on his request for same, we are confident Barfield suffered no harm from this denial. We overrule
these points of error.

(4) Ineffective Assistance of Counsel Is Not Established by the Record

 Barfield also complains that he received constitutionally ineffective assistance of counsel. (9) 
He bases these claims on his assertions of error in the two failures of the jury charge to require
unanimity, as addressed above. Since there was no error in the jury charge, counsel did not err in
failing to object to the charge. See Ex parte Thompson, 179 S.W.3d 549, 559-60 (Tex. Crim. App.
2005) (defendant not entitled to jury charge on lesser-included offense; therefore, counsel not
ineffective for failing to request); McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)
(not ineffective to fail to object to admissible evidence). (10)

 We affirm the judgment of the trial court.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: August 10, 2006

Date Decided: September 27, 2006


Publish
1. Deadly conduct can be the underlying felony for felony murder. Yandell v. State, 46 S.W.3d
357, 361 (Tex. App.--Austin 2001, pet. ref'd); Rodriguez v. State, 953 S.W.2d 342 (Tex.
App.--Austin 1997, pet. ref'd).
2. "[I]t has long been the general rule that when a single crime can be committed in various
ways, jurors need not agree upon the mode of commission. That rule is not only constitutional, it
is probably indispensable in a system that requires a unanimous jury verdict to convict." Schad, 501
U.S. at 649-50 (Scalia, J., concurring) (citations omitted).
3. Egregious harm consists of errors affecting the very basis of the case, depriving the
defendant of a valuable right, vitally affecting a defensive theory, or making the case for conviction
or punishment clearly and significantly more persuasive. Saunders v. State, 817 S.W.2d 688, 692
(Tex. Crim. App. 1991); Hall v. State, 937 S.W.2d 580, 583 (Tex. App.--Texarkana 1996, pet.
ref'd).
4. In Sanchez, the charge read: "an affirmative ('yes') answer on the issue [of sudden passion]
submitted must be unanimous, but if the jury is not unanimous in reaching an affirmative answer,
then the issue must be answered 'no.'" Nine jurors voted "no" and three "yes" on the issue of sudden
passion. See Sanchez v. State, No. 05-97-01389-CR, 1999 Tex. App. LEXIS 2352, at *19-20 (Tex.
App.--Dallas Mar. 31, 1999) (not designated for publication), aff'd, 23 S.W.3d 30 (Tex. Crim. App.
2000).

5. The State said it did not receive the order either, but it just looked up the order in the
courthouse's on-line system.
6. The court of appeals went on to find that the variance was not material. See Serna, 69
S.W.3d at 381-82.
7. For some time, the Texas Court of Criminal Appeals held that, where a statute provided a
certain amount of time to prepare for trial (e.g., in the case of newly appointed counsel or to reply
to an amended indictment on the day of trial), if the error was properly preserved, no showing of
harm on appeal was required. See Sodipo v. State, 815 S.W.2d 551 (Tex. Crim. App. 1990) (op. on
reh'g); Peters v. State, 575 S.W.2d 560 (Tex. Crim. App. 1979). In 1996, however, the court ruled
that cases involving statutes with absolute requirements--specifically Article 26.13 concerning
guilty plea admonishments--should be examined with a "case by case determination of whether in
fact a meaningful harm analysis is possible." See Matchett v. State, 941 S.W.2d 922, 928 (Tex.
Crim. App. 1996). The following year, the court stated more forcefully that, "[e]xcept for certain
federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error,
whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is
categorically immune to a harmless error analysis." See Cain v. State, 947 S.W.2d 262, 264 (Tex.
Crim. App. 1997).
8. See our discussion supra of the appropriateness of charging alternative methods of
committing a single offense.
9. See Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v. State, 726 S.W.2d 53, 57
(Tex. Crim. App. 1986). 
10. In addition, the trial record on direct appeal is ordinarily inadequate to glean trial counsel's
strategy, and thus, a claim of ineffective assistance is better pursued on habeas review, where there
has been some opportunity for the record to have been developed regarding trial counsel's reasons
for his or her actions. See Bone v. State, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002); Goodspeed
v. State, 187 S.W.3d 390 (Tex. Crim. App. 2005).




s New Roman","serif";mso-fareast-font-family:
"Times New Roman";mso-fareast-theme-font:minor-fareast;mso-ansi-language:EN-US;
mso-fareast-language:EN-US;mso-bidi-language:AR-SA'>




                                                     MEMORANDUM 
OPINION

 

            Verger Richardson (a/k/a Vergil
Richardson) and Mark Allen Richardson have filed a petition for writ of mandamus
asking this Court to compel the Honorable John F. Miller, Jr., judge of the 102nd
Judicial District Court, to execute orders dismissing the prosecutions against
them with prejudiceas requested by the prosecuting attorney.  

            This proceeding first appeared
before this Court, seeking the same relief, in January 2010.  In that mandamus opinion, we explained that
the statutory authority for dismissal of a prosecution was only with the
consent of the presiding judgeand that giving such consent is discretionary,
not a ministerial act.  The judge
declined to give consent.  Under those
facts, the trial judges action was discretionary and outside the bounds of
mandamus relief.

            The standard for mandamus relief
articulated by the Texas Court of Criminal Appeals requires the relator to
establish that:  (1) there is no adequate
remedy at law to redress the alleged harm; and (2) only a ministerial act, not
a discretionary or judicial decision, is being sought.  See
State ex rel. Young v. Sixth Judicial Dist. Court of Appeals at Texarkana,
236 S.W.3d 207, 210 (Tex. Crim. App. 2007). 
To grant mandamus, the Texas Court of Criminal Appeals has required
definitive, well-settled, and unequivocal legal authority from this Court that
indisputably governs the instant factual scenario.  Id.
at 212.  No such authority exists. 

            In this petition, although the same
basic relief is sought, relator has raised different arguments.  Relator states that Judge Miller had directed
the county attorney pro tem to consider specific testimony presented to the
grand jury, that she did so, and according to relator, she also recommended
dismissal.  Judge Miller still, however,
declined to dismiss the cases. 

            As we stated in our prior opinion,
the governing statute provides that:

The
attorney representing the State may, by permission of the court, dismiss a
criminal action at any time upon filing a written statement with the papers in
the case setting out his reasons for such dismissal, which shall be
incorporated in the judgment of dismissal. 
No case shall be dismissed without the consent of the presiding
judge.  

 

Tex. Code Crim. Proc. Ann. art. 32.02 (Vernon 2006).

            The decision itself is not
ministerial in nature, but remains within the discretion of the trial judge.[1]  

            Relator also argues briefly that the
statute itself is unconstitutional because it allows the judiciary to invade
the province of the executive branch, thus violating the Separation of Powers Clause
of the Texas Constitution.  Tex. Const. art II, § 1. 

            We disagree.  At this point in the proceeding, an
indictment has been filed in the 102nd Judicial District Court, and the judicial
branch has jurisdiction.  Judges are not
required to rule a particular way on requests made by or motions filed by the
partieseven if agreed to by both parties. 
To require such would negate the very purpose of the trial judge:  to adjudge the merits of matters brought
before it.  This does not constitute an
invasion of the authority of another branch of governmentit is the proper
exercise of the authority of the judicial branch.  

            We deny the petition.

 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date
Submitted:          June 1, 2010

Date
Decided:             June 2, 2010

 











[1]The
origin and development of dismissal authority was discussed by the court in Smith v. State, 70 S.W.3d 848 (Tex.
Crim. App. 2002), explaining that Article 32.02s predecessor was enacted to
provide some supervision by district courts in the form of veto power over
local district attorneys.  Id. at 85455; see In re State ex rel. Valdez, 294 S.W.3d 337 (Tex. App.Corpus
Christi 2009, orig. proceeding).  The
article states that a criminal prosecution may be dismissed only with the trial
courts consent.  This language, and the
cited cases, show that a trial courts giving of consent to a dismissal is not
a ministerial act.  Further, the reason
for providing veto power to a trial court, as articulated by the Smith opinion, indicates that the
exercise of such power is discretionary, and therefore, outside the bounds of
mandamus relief.